

March 13, 2023

<u>VIA CM/ECF</u>

The Honorable Lyle W. Cayce
U.S. Court of Appeals, Fifth Circuit
Office of the Clerk
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA  70130-3408

**Re:    New development in *State of Texas v. EPA*, No. 17-60088 (argued July 7, 2022)**

Dear Mr. Cayce:

Per Circuit Rule 28.4, we are bringing to the Panel's attention a new development impacting this case.  On February 22, 2023, Intervenor-Respondent Sierra Club filed a Clean Air Act complaint (copy attached) in the Northern District of California seeking a ruling from that court relating to issues this Court is considering.  Specifically, Sierra Club's California action alleges that EPA is under a mandatory duty to issue a Federal Implementation Plan ("FIP") for Rusk and Panola Counties, Texas, based on the nonattainment designation under review here.

Whether or not EPA has a mandatory duty to issue a FIP turns, in the first instance, on whether EPA's designation is unlawful, as Petitioners contend.  *See* Pet. Br. at 22-23; Pet. Reply Br. at 2 (EPA claims its designation "authorizes EPA to issue a Federal Implementation Plan for Martin Lake").  If this Court were to vacate the designation, as Petitioners have requested, EPA would have neither the duty nor authority to issue a FIP.

Sierra Club's complaint underscores the importance of a vacatur in this case. As Petitioners explained in briefing (*see, e.g.*, Pet. Br. at 14-17; Pet. Reply Br. at 2), and at oral argument, EPA's delays since its unlawful nonattainment designation have triggered statutory consequences for Petitioners under the Clean Air Act—and Sierra Club is evidently seeking to capitalize on those consequences. The slate should be wiped clean so that EPA can conduct a lawful attainment analysis and then, if necessary, Petitioners are afforded their

1901 Sixth Avenue North
Suite 1500
Birmingham, AL 35203-4642
**balch.com**

P.O. Box 306
Birmingham, AL 35201

ALABAMA  | FLORIDA | GEORGIA | MISSISSIPPI | TEXAS | WASHINGTON, DC

The Honorable Lyle W. Cayce
March 13, 2023
Page 2

statutorily granted time to remedy a nonattainment designation with a State Implementation Plan ("SIP") before EPA issues a FIP.

Respectfully submitted,

s/ P. Stephen Gidiere III
P. Stephen Gidiere III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

*Counsel for Petitioners Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*

s/ Ryan S. Baasch
Ryan S. Baasch
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
512-936-1700
Ryan.Baasch@oag.texas.gov

*Counsel for Petitioners the State of Texas and Texas Commission on Environmental Quality*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel states that this document complies with Fed. R. App.

P. 28(j) because the body of the letter contains 263 words.


Dated: March 13, 2023



s/ P. Stephen Gidiere III
P. Stephen Gidiere III

*Counsel for Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2023, a copy of the foregoing document was

served electronically through the Court's CM/ECF system on all registered counsel.


s/ P. Stephen Gidiere III
P. Stephen Gidiere III

*Counsel for Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*

Attachment

Kristin Henry
Joshua Smith
Dru Spiller
2101 Webster Street, Ste. 1300
Oakland, CA 94612
kristin.henry@sierraclub.org
joshua.smith@sierraclub.org
dru.spiller@sierraclub.org

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

SIERRA CLUB,

                Plaintiff,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, AND MICHAEL
S. REGAN, IN HIS OFFICIAL CAPACITY AS
ADMINISTRATOR

                Defendant.

Case No. _____

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Clean Air Act, 42 U.S.C. § 7401 *et seq.*

## INTRODUCTION

1.      This is a Clean Air Act citizen suit under 42 U.S.C. § 7604(a)(2), against EPA Administrator Michael S. Regan for his failure to protect human health and the environment from dangerous exposure to sulfur dioxide ("SO₂"). Specifically, the Administrator has violated 42 U.S.C. § 7410(c)(1)(A) by failing to satisfy its mandatory duty to promulgate a federal implementation plan ("FIP"), or approve a corrected state implementation plan ("SIP"), within two years of finding that Texas failed to submit a SIP, as required under the Clean Air Act to bring Rusk and Panola Counties into attainment with the National

Ambient Air Quality Standard ("NAAQS") for SO$_2$. 85 Fed. Reg. 48,111 (Aug. 10, 2020); *see also* 42 U.S.C. §§ 7502, 7514-7514a.

2. Exposure to SO$_2$, for even short time periods, such as five minutes, can have significant human health impacts, including the aggravation of asthma attacks and cardiovascular and respiratory failure, leading to increased hospitalizations and premature death. 75 Fed. Reg. 35,520, 35,525 (June 22, 2010). Children, the elderly, and adults with asthma are particularly at risk. SO$_2$ also contributes to the formation of particulate matter pollution, which can also be transported long distances and can contribute to poor air quality hundreds of miles away.[1] Indeed, SO$_2$ pollution from a handful of Texas power plants has been shown to contribute to premature death, asthma events, tens of thousands of lost work and school days, and billions in public health impacts each year across the central United States.[2]

3. Effective January 12, 2017, EPA determined that the air quality in the community surrounding the coal-burning Martin Lake power plant in portions of Rusk and Panola Counties, Texas (the "Martin Lake" or "Rusk-Panola" nonattainment area), failed to meet the health-based SO$_2$ NAAQS. Accordingly, the agency designated those areas as being in "nonattainment" with the standard. 81 Fed. Reg. 89,870 (Dec. 13, 2016).[3]

---

[1] EPA, Sulfur Dioxide (SO$_2$) Pollution, Sulfur Dioxide Basics, https://www.epa.gov/so2-pollution/sulfur-dioxide-basics.

[2] *See* Report of Dr. George Thurston, at 16-18, (Apr. 18, 2015), *available at* www.regulations.gov (Docket ID No. EPA-R06-OAR-2014-0754-0071).

[3] In that same final rule, EPA determined that separate areas surrounding the coal-fired Big Brown power plant in Freestone and Anderson Counties, and the Monticello power plant in Titus County—each of which are many miles away from Martin Lake—also failed to meet the health-based 2010 SO$_2$ NAAQS. 81 Fed. Reg. at 89,873. In 2018, however, Big Brown

4.        Within 18 months of the effective date of that rule—by July 12, 2018—Texas was required to submit a Clean Air Act "nonattainment" plan ensuring that the area around Martin Lake comes into compliance with the NAAQS as "expeditiously as practicable." 42 U.S.C. §§ 7514-7514a; *see also id.* § 7502(a)(2)(A); 81 Fed. Reg. at 89,871. Texas failed to submit a plan within 18 months, as required.

5.        Under 42 U.S.C. § 7410(k)(1)(B), EPA must determine whether a SIP submittal is administratively complete within six months of the date it is due. But if the state fails to timely submit a SIP, there is no submittal that may be deemed administratively complete, and EPA has a nondiscretionary duty to make a finding to that effect, *id.* —commonly referred to as a "finding of failure to submit."

6.        In response to a separate Clean Air Act citizen lawsuit,[4] on August 10, 2020, EPA issued the statutorily required finding that Texas failed to submit a nonattainment SIP for the Rusk-Panola nonattainment area. 85 Fed. Reg. 48,111 (Aug. 10, 2020). That finding of failure to submit triggered a nondiscretionary duty for EPA to, anytime within two years, issue a federal implementation plan ("FIP") or approve a state plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS. 42 U.S.C. § 7410(c)(1)(A).[5] EPA's finding that Texas failed to submit the required nonattainment SIP became effective September 9, 2020, and therefore required EPA to issue a federal plan or

---

and Monticello permanently ceased operations, and in 2021, EPA issued a final Clean Data Determination for each of those areas, thereby suspending Texas's SIP obligations for each of those separate areas. 86 Fed. Reg. 26,401 (May 14, 2021). Accordingly, the Big Brown and Monticello nonattainment areas are not relevant to this case.

[4] *Sierra Club v. Wheeler*, Case No. 1:20-cv-1088 (D.D.C. filed Apr. 27, 2020), ECF Doc. 1.

[5] 42 U.S.C. § 7410(c)(1); 85 Fed. Reg. 48,111 (Aug. 10, 2020).

3
COMPLAINT

approve a corrected state implementation plan by September 9, 2022. 85 Fed. Reg. at 48,112; *see also* 42 U.S.C. § 7410(c)(1)(A).

7.      More than two years have passed since EPA issued a finding that Texas failed to submit the required state implementation plan, but the agency has failed to issue a FIP for the Rusk-Panola $SO_2$ nonattainment area. EPA has also failed to approve a corrected Texas implementation plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS in the Rusk-Panola nonattainment area. Consequently, EPA has violated, and is in in violation of, its nondiscretionary duty under 42 U.S.C. § 7410(c)(1)(A).

8.      To protect the health and recreational interests of its members living, working, recreating, and breathing polluted air in the communities surrounding Martin Lake, Sierra Club seeks an order compelling the Administrator to, by a date certain, either issue a federal implementation plan or approve a state plan that meets the necessary $SO_2$ pollution reductions to ensure attainment of the NAAQS, as required under the Clean Air Act. 42 U.S.C. §§ 7410(c)(1)(A); 7514-7514a; *see also id.* § 7502(a)(2)(A); 81 Fed. Reg. at 89,871.

**JURISDICTION AND VENUE**

9.      This is a citizen suit under the Clean Air Act, 42 U.S.C. § 7604(a)(2). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 (citizen suits), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus action). The relief requested by Sierra Club is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201 (declaratory judgment), 2202, and 1361 (action to compel an officer of the United States).

10.     In accordance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54, Sierra Club served notice on the Administrator of the Clean Air Act violation alleged in this Complaint, and its intent to initiate the present action. *See* Ex. A. Notice was provided via electronic

mail and Federal Express, addressed to the Administrator, and delivered no later than December 22, 2022. *See* Ex. B. More than 60 days have passed since Sierra Club served its notice of intent, and the Clean Air Act violations described in the notice are continuing.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant Michael S. Regan is an officer of the United States being sued in his capacity as the Administrator of the U.S. Environmental Protection Agency, and his official residence is in the District of Columbia.

## PARTIES

12.     Plaintiff Sierra Club is a not-for-profit corporation organized and existing under the laws of California, with its principal place of business located in Oakland, California. Sierra Club has more than 611,221 members throughout the United States, including approximately 20,998 members in Texas, some of whom live, work, travel, recreate, and breathe in the Texas areas at issue here, which fail to meet federal clean air safeguards. Those members' use, enjoyment, and ability to breathe the air in areas of Rusk and Panola Counties is diminished by pollution from the Martin Lake power plant. Moreover, $SO_2$ pollution from Martin Lake has been shown to contribute to adverse downwind air quality in communities and national parks like Big Bend, thereby impairing Sierra Club members use and enjoyment of those areas.

13.     Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the Earth's resources and ecosystems; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out those objectives.

14.     Sierra Club and its members are concerned about diminished air quality and visibility caused by pollution from large coal-burning power plants. For many years, Sierra Club has conducted public education on, and advocacy for, effective and timely implementation of Clean Air Act requirements in Texas, including filing multiple rounds of public comments on proposed state and EPA actions relevant to implementation of Clean Air Act's standards and permits in Texas, as well as the implementation of EPA's 2010 $SO_2$ NAAQS.

15.     Sierra Club brings this action on behalf of itself and its members.

16.     Defendant Michael S. Regan is the Administrator of the United States Environmental Protection Agency and is charged with implementing and enforcing the Clean Air Act. The Administrator's Clean Air Act responsibilities include, *inter alia*, issuing a federal nonattainment plan or approving a corrected state plan within two years of determining that a state has failed to submit the requisite plan for bringing an area into attainment. 42 U.S.C. §§ 7410(k)(1)(B)-(C); 7410(c)(1). Sierra Club is suing Mr. Regan in his official capacity as the Administrator of EPA.

## FACTUAL AND REGULATORY BACKGROUND

### A.  The $SO_2$ NAAQS and Human Health

17.     Bringing the entire country expeditiously into compliance with health-protective ambient air quality standards is the "heart" of the Clean Air Act. *Ala. Power Co. v. Costle*, 636 F.2d 323, 346 (D.C. Cir. 1979). The Clean Air Act directs EPA to issue National Ambient Air Quality Standards "establishing the maximum permissible concentrations of air pollutants." *Id*. The "primary" NAAQS are those whose attainment and maintenance are

"requisite to protect the public health," with an "adequate margin of safety." 42 U.S.C. § 7409(b)(1).

18.     Exposure to $SO_2$, for even short time periods, such as five minutes, can have significant human health impacts, including the aggravation of asthma attacks and cardiovascular and respiratory failure, leading to increased hospitalizations and premature death. Children, the elderly, and adults with asthma are particularly at risk.

19.     To address these significant health threats, in 2010, EPA issued a new one-hour primary $SO_2$ NAAQS to protect the public against adverse respiratory effects associated with short-term exposure. 75 Fed. Reg. 35,520, 35,525 (June 22, 2010). EPA estimated that implementation of the new standard will avoid between 2,300 and 5,900 premature deaths, 54,000 asthma attacks, and $36 billion dollars in public health costs and lost productivity *every year*. *Id*. at 35,588; *see also* EPA, Final Regulatory Impact Analysis (RIA) for the $SO_2$ National Ambient Air Quality Standards (NAAQS), at tbl. 5.14 (June 2010), https://www3.epa.gov/ttn/ecas/docs/ria/naaqs-so2_ria_final_2010-06.pdf (last visited Feb. 22, 2023).

20.     $SO_2$ pollution is not only harmful to human health by itself, but it also contributes to the atmospheric formation of fine particulate matter ("PM"), which can penetrate deep into the lungs and cause a host of health problems, including aggravated asthma, chronic bronchitis, and premature death. 78 Fed. Reg. 3086, 3103, 3105-06 (Jan. 15, 2013). PM caused by $SO_2$ pollution can also be transported long distances and can contribute to poor air quality in communities hundreds of miles away, including in Class I national parks and wilderness areas where EPA and the states are required to protect

7
COMPLAINT

against, and remedy, visibility pollution. *See generally* 42 U.S.C. § 7491; 40 C.F.R.

§ 51.308; 81 Fed. Reg. 296 (Jan. 5, 2016).

### B. Implementation of the SO₂ NAAQS Under the Clean Air Act

21.     EPA's issuance of the 2010 SO$_2$ NAAQS triggered mandatory statutory

timetables for implementation of the standard. Within two years—by 2012—EPA was

required to "designate" as "nonattainment" any area of the country that "does not meet" the

standard; "attainment" for those areas that meet the standard; and "unclassifiable" for areas

where EPA lacks information to make a designation. 42 U.S.C. § 7407(d)(1)(A) and (B)(i).

22.     EPA's air quality designations govern the stringency of the Clean Air Act SIPs

that are required from each state to ensure achievement and maintenance of the NAAQS.

For areas that are designated as being in "attainment" (*i.e.*, meeting the NAAQS), the state

must develop a plan that ensures maintenance and adequate enforcement of the NAAQS.

*See generally* 42 U.S.C. § 7410(a)(1)-(2). For areas that are designated "nonattainment"

(*i.e.*, violating the standard), the state must, within 18 months of the effective date of the

designation, submit a plan that meets specific pollution reduction requirements, and

provides for attainment of the NAAQS as expeditiously as practicable, but not later than 5

years from the effective date of the nonattainment designation. 42 U.S.C. §§ 7502-7503,

7514-7514a.

### C. EPA's Nonattainment Designations for Texas

23.     Nearly all SO$_2$ pollution in the United States comes from a handful of very large

coal-fired power plants. Texas's Martin Lake Steam Electric Station, is routinely ranked

among the largest annual SO$_2$ polluters in the country, and in many years, it is the single

largest source of harmful SO$_2$ in the country.

8
COMPLAINT

24.     On December 13, 2016, under 42 U.S.C. § 7407(d), EPA determined that the area surrounding Martin Lake, in portions of Rusk and Panola Counties, failed to meet the health-based $SO_2$ NAAQS, and therefore the agency issued a final rule designating the area as being in nonattainment. 81 Fed. Reg. at 89,875-76.[6] The effective date of the final rule was January 12, 2017, *id*. at 89,870; and the designation remains final and effective.

**D.  Texas Failed to Submit a Nonattainment plan.**

25.     Within 18 months—*i.e.*, by no later than July 12, 2018—Texas was required to submit for EPA review a SIP that achieved compliance with the NAAQS in the area surrounding Martin Lake as expeditiously as practicable, but not later than 5 years from the effective date of the nonattainment designation. 42 U.S.C. § 7514; *see also* 81 Fed. Reg. at 89,871. Texas failed to submit any plan.

26.     Under 42 U.S.C. § 7410(k)(1)(B), EPA is required to determine whether a SIP submittal is administratively complete. If, six months after a submittal is due, a state has failed to submit a SIP, there is no submittal that may be deemed administratively complete, and EPA has a nondiscretionary duty to issue a finding that the state failed to submit the required plan. *Id.* This determination is referred to as a "finding of failure to submit."

---

[6] As noted, EPA determined in the same rule that separate areas surrounding the Big Brown power plant in portions of Freestone and Anderson Counties, and the Monticello power plant in Titus County, failed to meet the 2010 $SO_2$ NAAQS. 81 Fed. Reg. at 89,873. In 2018, however, each of those power plants permanently retired, and in 2021, EPA issued a final rule suspending Texas's SIP obligations for each of those separate areas. 86 Fed. Reg. 26,401 (May 14, 2021). Those deactivations, however, do not affect air quality around Martin Lake, which continues to operate and cause violations of the NAAQS.

27.    On April 27, 2020, Sierra Club filed a Clean Air Act citizen lawsuit against the EPA for failing to issue the statutorily-required finding that Texas had failed to submit a nonattainment plan for the Martin Lake area.[7]

28.    In response, on August 10, 2020, EPA issued the requisite finding that Texas failed to submit a nonattainment SIP for the Rusk-Panola nonattainment area. That finding triggered a separate obligation for EPA to, within two years, issue a federal implementation plan or approve a state plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS. 42 U.S.C. § 7410(c)(1); 85 Fed. Reg. 48,111 (Aug. 10, 2020).

29.    According to 85 Fed. Reg. at 48,112, that finding of failure to submit became effective September 9, 2020, and therefore EPA was required to issue a federal plan or approve a corrected state implementation plan by September 9, 2022. *See also* 42 U.S.C. § 7410(c)(1)(A).

30.    More than two years after EPA determined that Texas failed to submit the required state implementation plan the agency still has not issued a FIP for the Rusk-Panola $SO_2$ nonattainment area. EPA has also failed to approve a corrected Texas implementation plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS in the Rusk-Panola nonattainment area. Consequently, EPA has violated, and is in violation of, its mandatory statutory duties under 42 U.S.C. § 7410(c)(1)(A).

**PLAINTIFFS' INJURIES**

31.    Sierra Club members include individuals who live, work, travel, recreate, and breathe in the communities surrounding the Martin Lake power plant, where EPA has

---

[7] *Sierra Club v. Wheeler*, Case No. 1:20-cv-1088 (D.D.C. filed Apr. 27, 2020), ECF Doc. 1.

determined that air quality "does not meet" the national $SO_2$ standard that is "requisite to protect public health," 42 U.S.C. §§ 7407(d)(1)(A)(i), 7409(b)(1); 81 Fed. Reg. 89,870, and for which EPA has failed to issue a finding that Texas did not submit the required Clean Air Act plan necessary to achieve compliance with the NAAQS as expeditiously as practicable. 42 U.S.C. §§ 7502, 7410(k)(1)(B), 7514-7514a; 85 Fed. Reg. 48,111 (Aug. 10, 2020).

32.     Sierra Club members are concerned about poor air quality in these nonattainment areas, and therefore avoid prolonged exposure to the areas around these power plants, including in the state park and reservoir adjacent to the Martin Lake power plant.

33.     Sierra Club's members also use and enjoy the iconic and treasured national parks and wilderness areas, including Big Bend and Guadalupe Mountains National Parks, where air quality is, and has been, adversely affected by anthropogenic haze-causing pollution from Texas sources, including the Martin Lake power plant. *See generally* 81 Fed. Reg. 296 (Jan. 5, 2016) (concluding $SO_2$ pollution from Martin Lake contributes to visibility impairment in national parks and wilderness areas). These members are harmed by haze pollution, which diminishes their views in the parks and reduces their enjoyment from hiking, camping, and otherwise recreating in these natural areas.

34.     As a result of EPA's failure to timely fulfill its nondiscretionary obligation to either issue a federal plan or approve a state plan that meets the Clean Air Act's requirements for nonattainment plans, Texas still does not have a lawful and fully-approved nonattainment plan that requires enforceable reductions in harmful $SO_2$ pollution, and ensures attainment of the health-based NAAQS as expeditiously as practicable, 42 U.S.C. §§ 7502, 7514-7514a. Consequently, Sierra Club members in the Texas nonattainment

areas at issue continue to be exposed to elevated levels of $SO_2$ pollution that are, by EPA's own definition, harmful to breathe. Exceedances of safe levels of $SO_2$ pollution force Sierra Club members to reduce their time outside, avoid areas around the power plants, and impairing their use and enjoyment of nearby recreation opportunities, their communities, and affected national parks and wilderness areas.

35. EPA's failure to timely fulfill its mandatory obligation to issue a federal implementation plan or approve a state plan harms Sierra Club members by prolonging poor air quality conditions that adversely affect or threaten their health; and by delaying measures and procedures mandated by the Act that would protect them from harmful sulfur dioxide pollution in places where they live, work, travel, recreate, and breathe.

36. It is now even more critical for EPA to stop its illegal delay in ensuring there is an effective plan in place to address air pollution. Numerous studies have shown that air pollution, specifically, fine particulate matter, which is caused by $SO_2$, results in worse outcomes for people who have COVID-19 and similar respiratory diseases.[8]

37. The acts and omissions of EPA alleged here harm Sierra Club's members' environmental, aesthetic, recreational, and health welfare interests by diminishing their use and enjoyment of the public lands and natural environment surrounding the Martin Lake power plant, and by prolonging their exposure to breathing polluted air.

38. EPA's failure to timely fulfill its mandatory Clean Air Act obligations has similarly harmed Sierra Club's members by prolonging their exposure to manmade haze-

---

[8] *See, e.g.*, Xiao Wu *et al.*, Exposure to air pollution and COVID-19 mortality in the United States (Apr. 2020), *available at* https://doi.org/10.1101/2020.04.05.20054502.

causing SO$_2$ pollution from Martin Lake, which impairs their use and enjoyment of iconic and treasured national parks like Big Bend, Guadalupe Mountains, and other public lands. *See* 81 Fed. Reg. 296 (Jan. 5, 2016).

39.  EPA's failure to fulfill its legal obligation also harms Sierra Club's members in other areas that are downwind of the area at issue in this Complaint by prolonging and exacerbating their exposure to particulate matter caused by SO$_2$. Emissions from the power plant at issue here have been shown to contribute to premature death, asthma events, tens of thousands of lost work and school days, and hundreds of millions in public health impacts *each year* across the central region of the United States.[9]

40.  EPA's failure to fulfill its statutory obligations also deprives Sierra Club and its members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to: the right to participate in Clean Air Act rulemakings to determine whether major sources in the nonattainment areas at issue must decrease harmful SO$_2$ pollution to protect public health; the right to judicially challenge any final state plan that does not ensure attainment of the NAAQS as expeditiously as possible; the right to enforce requirements of the Act for preparation and implementation of plans to remedy and prevent violations of SO$_2$ safeguards; and the right to comment on and judicially challenge such plans. *See generally* 42 U.S.C. § 7607 (providing for notice, public comment, and the right to judicial review of implementation plans).

---

[9] *See* Report of Dr. George Thurston, at 16-18, (Apr. 18, 2015), *available at* www.regulations.gov (Docket ID No. EPA-R06-OAR-2014-0754-0071).

13
COMPLAINT

41.     EPA's acts and omissions alleged here further injure Sierra Club and its members by depriving them of information to which they are entitled by law, including, but not limited to, EPA's published identification of the attainment status for the area around Martin Lake, and the agency's plan for achieving compliance with the NAAQS. If Sierra Club had access to such information, they would use it to, among other things: educate their members and the public about the scope of air quality violations in Rusk and Panola Counites; advocate for adoption of adequate measures to ensure attainment and maintenance of the NAAQS; and more efficiently target Sierra Club's actions to promote effective implementation of the 2010 SO$_2$ NAAQS. Such information would also assist Sierra Club's members in determining whether they are exposed to SO$_2$ levels that violate the health standard, and in acting to protect themselves, their families, their property, and their animals from SO$_2$ pollution. The acts and omissions complained of here deprive Sierra Club and its members of the benefits of such information and thus cause them injury.

42.     EPA's failure also hampers Sierra Club's ability to perform certain programmatic functions essential to its mission, such as ensuring that states put in place the public health and environmental protections that accompany more stringent nonattainment classifications, and educating the public about these protections.

43.     Sierra Club's and its members' protectable health, recreational, aesthetic, procedural, informational, and organizational interests have been and continue to be harmed by EPA's failure to fulfill its mandatory, nondiscretionary duty to enforce and implement the Clean Air Act, including its failure to issue a federal implementation plan or approve a corrected state plan for attaining the SO$_2$ NAAQS in all areas of the state.

44.     If the Administrator is required to timely issue a federal implementation plan or approve a corrected state plan, as the law requires, it would redress Sierra Club's members' injuries. In either event, EPA would be required to expeditiously issue or approve a plan requiring reduction in harmful $SO_2$ pollution and ensuring expeditious attainment of the NAAQS, thereby benefitting public health as well as Sierra Club's members' recreational, aesthetic, and environmental interests.

**CLAIM FOR RELIEF**

**Failure to Issue a Federal Implementation Plan or Approve a Corrected State Implementation Plan for the Rusk and Panola County $SO_2$ Nonattainment Area, as Required By 42 U.S.C. § 7410(c)(1)(A)**

45.     Sierra Club incorporates all previous paragraphs by reference.

46.     Under the Clean Air Act, any person may commence a civil action against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Air Act] which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2).

47.     On June 22, 2010, EPA issued a revised one-hour, primary $SO_2$ NAAQS to protect the public against adverse respiratory effects associated with short-term $SO_2$ exposure. 75 Fed. Reg. 35,520.

48.     On December 13, 2016, under 42 U.S.C. § 7407(d), EPA designated the area surrounding Martin Lake in the Rusk and Panola Counties Area as being in nonattainment with the health-based 2010 $SO_2$ NAAQS. 81 Fed. Reg. at 89,875-76. The effective date of the final rule was January 12, 2017, and the designation remains effective. *Id*.

49.     Within 18 months of the effective date of the nonattainment designations—*i.e.*, by no later than July 12, 2018—Texas was required to submit for EPA review a Clean Air

15
COMPLAINT

Act plan that provides for attainment of the NAAQS as expeditiously as practicable, but no later than five years. 42 U.S.C. §§ 7514, 7514a; *see also* 81 Fed. Reg. at 89,871. Texas failed to meet that deadline.

50.     Effective September 9, 2020, EPA issued a finding under 42 U.S.C. § 7410(k)(1)(B) that Texas failed to submit a nonattainment SIP for the Rusk-Panola nonattainment area surrounding the Martin Lake power plant. 85 Fed. Reg. at 48,112. That finding triggered a nondiscretionary statutory duty for EPA, within two years, to issue a federal implementation plan or approve a state plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS. 42 U.S.C. § 7410(c)(1)(A).

51.     More than two years have passed since EPA issued that finding of failure to submit, and EPA has not taken final action to issue a federal implementation plan or approve a state implementation plan ensuring attainment of the $SO_2$ NAAQS around Martin Lake.

52.     Consequently, EPA has violated, and is in violation of, its mandatory statutory duty to issue a federal implementation plan or approve a corrected state plan under the Clean Air Act, 42 U.S.C. § 7410(c)(1)(A), for the Martin Lake nonattainment area.

53.     EPA's failure to issue a federal plan or approve a corrected state plan constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 7604(a)(2). Such failure is ongoing.

54.     Accordingly, Sierra Club is entitled to an order from this Court directing EPA to issue, by a date certain, a finding that Texas failed to fulfill its statutory duty to issue a federal implementation plan or approve a state implementation plan for the Rusk- Panola nonattainment area.

THEREFORE, Sierra Club respectfully requests that the Court:

(1) Declare that the Administrator is in violation of the Clean Air Act with respect to his failure to perform his mandatory, nondiscretionary duty to take final action issuing a federal implementation plan or approving a corrected state implementation plan for the areas of Rusk and Panola Counties that are designated as nonattainment under the $SO_2$ NAAQS, as described above;

(2) Issue a mandatory injunction requiring the Administrator perform his mandatory duty to issue a federal implementation plan or approve a corrected state implementation plan by a date certain;

(3) Retain jurisdiction over this matter to ensure compliance with the Court's orders;

(4) Award Sierra Club its reasonable costs of litigation, including attorneys' fees, under 42 U.S.C. § 7604(d); and

(5) Grant such other relief as the Court deems just and proper.

DATED: this 22nd day of February, 2023.

Respectfully submitted,

*/s/ Kristin Henry*
Kristin Henry (CA Bar No. 220908)
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5716
kristin.henry@sierraclub.org

Joshua Smith (Oregon Bar No. 071757)
(Pro Hac Vice Motion To Be Filed)
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
joshua.smith@sierraclub.org

Dru Spiller (DC Bar No.1736750)
(Pro Hac Vice Motion To Be Filed)
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612

17
COMPLAINT

(415) 977-5696
dru.spiller@sierraclub.org


*Attorneys for Plaintiff Sierra Club*

18
COMPLAINT