## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### Case No. 17-60088

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; BIG BROWN
POWER COMPANY, L.L.C.; SANDOW POWER COMPANY, L.L.C.,
LUMINANT MINING COMPANY, L.L.C.

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S.
REGAN, in his Official Capacity as Administrator of the United States
Environmental Protection Agency,

Respondents.

---

### Consolidated with Case No. 21-60673

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; LUMINANT
MINING COMPANY, L.L.C.,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S.
REGAN, Administrator, United States Environmental Protection Agency,

Respondents.

---

Petition for Review of Final Administrative Action
of the United States Environmental Protection Agency

---

### RESPONSE TO PETITON FOR REHEARING EN BANC

---

OF COUNSEL:

HALI KERR
MIKE THRIFT
U.S. Environmental Protection Agency
Office of General Counsel
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Mail Code 2344A
Washington, D.C. 20460

BROOKE VILLEGAS
AARON VARGAS
U.S. Environmental Protection Agency
Office of the Regional Counsel
U.S. EPA Region 6
1201 Elm St., Suite 500
Dallas, TX 75270

DATE: April 15, 2024

TODD KIM
Assistant Attorney General

PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044

*Counsel for Respondents*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Fed. R. App. P. 26.1 and Fifth Circuit Rule 26.1, Respondent Environmental Protection Agency ("EPA") is a governmental entity and Respondent Michael Regan is sued in his official capacity as Administrator of EPA, and as such a corporate disclosure statement and certificate of interested persons is not required.

So certified this 15th day of April, 2024 by

<u>/s/  *Perry M. Rosen*</u>
Perry M. Rosen
Counsel for Respondents

# **GLOSSARY**

| | |
|---|---|
| **APA** | Administrative Procedure Act |
| **App.** | Appendix |
| **EPA** | Environmental Protection Agency |
| **NAAQS** | National Ambient Air Quality Standard |
| **ppb** | Parts per Billion |

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

BACKGROUND .............................................................................................2

ARGUMENT ..................................................................................................5

I.  THERE IS NO QUESTION OF EXCEPTIONAL IMPORTANCE,
    AS THE MAJORITY APPLIED THE CORRECT STANDARD OF
    REVIEW AND CONDUCTED THE REQUIRED SEARCHING AND
    CAREFUL REVIEW..................................................................................5

    A.  The Majority Correctly Found that EPA Did Not "Fail to Review
        the Available Monitoring Data".........................................................8

    B.  The Majority Correctly Found that EPA Did Not "Fail to Review
        Luminant's Modeling" .....................................................................10

    C.  The Majority Correctly Found that EPA Did Not Improperly Rely
        on AERMOD Modeling .....................................................................12

    D.  Petitioners May Not Rely on Extra-Record Recent Emissions Data
        to Obtain En Banc Review ...............................................................15

II.  THE COURT APPLIED WELL-SETTLED PRECEDENT OF THIS
     COURT AND THE SUPREME COURT AND CREATED NO
     CONFLICT..............................................................................................16

CONCLUSION ............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Balt. Gas and Elec. Co. v. NRDC,*
    462 U.S. 87 (1983)............................................................................17

*BCCA Appeal Grp. v. EPA,*
    355 F.3d 817 (5th Cir 2003) ................................................... 9, 10, 17

*Clean Water Action v. EPA,*
    936 F.3d 308 (5th Cir. 2019) ...............................................................17

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021)............................................................................17

*Gulf Restoration Network v. McCarthy,*
    783 F.3d 227 (5th Cir. 2015) ...............................................................16

*Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.,*
    602 F.3d 687 (5th Cir. 2010) ......................................................... 17, 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983).................................................................... 5, 7, 14

*Sierra Club v. EPA,*
    939 F.3d 649 (5th Cir. 2019) ...............................................................18

*Texas Oil & Gas Ass'n v. EPA,*
    161 F.3d 923 (5th Cir. 1998) ...............................................................14

*Texas v. EPA,*
    690 F.3d 670 (5th Cir. 2012) ..........................................................5, 18

*Texas v. EPA,*
    983 F.3d 826 (5th Cir. 2020) ......................................................... 15, 17

*Wilson v. U.S. Dep't of Agric.*,
  991 F.2d 1211 (5th Cir. 1993) ...................................................................5

*Yogi Metals Grp., Inc. v. Garland*,
38 F.4th 455 (5th Cir. 2022) .....................................................................5

**Statutes**

5 U.S.C. § 706(2)(A) ..................................................................................1

42 U.S.C. § 7407(d) ...................................................................................2

42 U.S.C. § 7407(d)(3) .............................................................................16

42 U.S.C. § 7505a ....................................................................................16

**Rules**

Fed. R. App. P. 26.1 ................................................................................. iii

Fed. R. App. P. 35(a) .................................................................................2

Fifth Circuit Rule 26.1 ............................................................................. iii

**Code of Federal Regulations**

40 C.F.R. Part 51 App. W..........................................................................13

40 C.F.R. Part 51, App. W §1.0.e .............................................................12

40 C.F.R. Part 51, App. W § 3.2.1.b .........................................................10

40 C.F.R. Part 51, App. W § 3.3. ..............................................................10

40 C.F.R. Part 51, App. W § 4.2.2.1 .........................................................13

**Federal Registers**

70 Fed. Reg. 68, 218 (Nov. 9, 2005) .........................................................13

80 Fed. Reg. 51,052 (Aug. 21, 2015).......................................................2, 3

84 Fed. Reg. 43,757 (Aug. 22, 2019)..........................................................4

86 Fed. Reg. 34,187 (June 29, 2021) ..........................................................4

## INTRODUCTION

The petition fails the demanding standard for en banc review.  It questions whether, when reviewing a federal agency's scientific findings and conclusions in its area of technical expertise, a court owes the agency "a heightened level of deference that excuses the agency from compliance with the [Administrative Procedure Act's ("APA's")] decision-making requirements."  Pet. 1.  But the panel did not so hold.  It simply recognized, in accord with both the APA's plain text and countless precedents of the Supreme Court and this Court, that the relevant "decision-making requirement" -- that an agency not fact-find in an "arbitrary" or "capricious" manner, 5 U.S.C. § 706(2)(A) -- is precisely what compels the reviewing court to accord the agency's findings (scientific or otherwise) a high level of deference.  Petitioners argue that too narrow a standard of review threatens the constitutional separation of powers, but fealty to that separation requires courts to apply the deferential standard of review that Congress wrote into the statute.

Stripped of rhetoric, the petition presents a garden-variety APA controversy: whether the Environmental Protection Agency ("EPA") adequately explained why a submission of ostensibly contrary evidence did not dissuade the agency from relying on a long-approved scientific model to find that two counties in Texas were violating air quality standards.  That different panel members reached different conclusions on that score does not elevate this dispute to "exceptional importance"

1

or signify that "en banc review is necessary to secure or maintain the uniformity of the [C]ourt's decisions." Fed. R. App. P. 35(a). The petition should be denied.

## BACKGROUND

In 2010, acting under the Clean Air Act, EPA set the required health-based National Ambient Air Quality Standard ("NAAQS") for sulfur dioxide ("$SO_2$") at 75 parts per billion ("ppb"). EPA then had to determine whether local areas attained that standard, designating them as "attainment," "nonattainment," or "unclassifiable." 42 U.S.C. § 7407(d). Where available information demonstrates that an area violates the NAAQS, it *must* be designated nonattainment. *Id.*

Required to issue the subject designation by December 2016, EPA issued guidance in 2015 to assist states in submitting their proposed designations. EPA explained that due to the lack of properly placed monitors, the 2016 designations would likely need to be based on modeling. App.5-6. EPA further confirmed the efficacy of air dispersion modeling for informing $SO_2$ designations, recommending use of the peer-reviewed AERMOD dispersion model, which EPA adopted in 2005. App.7.

EPA also issued the Data Requirements Rule in 2015, 80 Fed. Reg. 51,052 (Aug. 21, 2015) ("DRR"), which: (a) emphasized the importance of characterizing

2

$SO_2$ ambient concentrations based on "air quality in the vicinity of large sources of $SO_2$" (p. 51,053); (b) cited the history of using air dispersion modeling for making $SO_2$ NAAQS designations (p. 51,057); and (c) explained that ambient $SO_2$ concentrations can be modeled accurately, "especially in areas where one or only a few sources exist," as in Rusk/Panola Counties, which are impacted predominantly by the Martin Lake power plant (p. 51,057/3). *See also* Opinion ("Op.") at 6, citing the DRR.

In September 2015, Sierra Club submitted AERMOD air dispersion modeling for Rusk/Panola Counties. App.312-324. In 2016, Petitioner Luminant submitted data based on an unapproved model, and Sierra Club submitted updated AERMOD modeling. App.1289-90, 1585, 1627; Op. at 8.

On December 13, 2016, EPA promulgated the final $SO_2$ NAAQS designation for Rusk/Panola Counties. App.1229. Because there was no air quality monitoring data representative of maximum $SO_2$ concentrations for Rusk/Panola Counties, EPA relied on air dispersion modeling. EPA determined that Rusk/Panola Counties violated the 2010 $SO_2$ NAAQS and designated them nonattainment.

Petitioners challenged EPA's 2016 designation and sought reconsideration of that designation. App.1670, 1692. EPA agreed to reassess its determination and issued a Proposed Error Correction, explaining that "[t]he purpose of this is [] to solicit input from the public…." 84 Fed. Reg. 43,757, 43,762/2 (Aug. 22, 2019). After significant study, in 2021 EPA withdrew the proposed error correction, denied Petitioners' reconsideration petitions, and confirmed that Rusk/Panola Counties were in nonattainment in 2016 and that, if anything, the 2016 assessment of the level of nonattainment was underestimated. 86 Fed. Reg. 34,187 and 34,141 (June 29, 2021); *see* pp. 13-14, *infra*. Following briefing and argument, the Court upheld EPA's 2016 designation and EPA's 2021 reconsideration of that earlier determination.

Applying the standard of review long applied by this Court (Op. at 12-13), the majority found that EPA made a careful and reasoned (non-arbitrary) decision fully supported by the record. Op. at 13-27. The majority cited specific portions of the record supporting EPA's conclusions, finding, *inter alia*, that EPA fully: (a) explained why the AERMOD model was "the best modeling available;" (b) considered purported conflicting modeling presented by Petitioners; (c) explained why distant air quality monitoring was not probative; and (d) otherwise considered

4

Petitioners' claims (Op. at 12-16), noting where Petitioners failed to cite record evidence supporting their own position and otherwise explaining the flaws in Petitioners' assertions.  *See, e.g.*, Op. at 15, n.2.

## ARGUMENT

I.    **THERE IS NO QUESTION OF EXCEPTIONAL IMPORTANCE, AS THE MAJORITY APPLIED THE CORRECT STANDARD OF REVIEW AND CONDUCTED THE REQUIRED SEARCHING AND CAREFUL REVIEW**

Under the controlling standard of review, EPA's NAAQS designation may be set aside only if it is "arbitrary, capricious, an abuse of discretion, [or] not in accordance with law…."  *Texas v. EPA*, 690 F.3d 670, 676 (5th Cir. 2012).  In making this assessment, courts "look to whether the EPA examined the relevant data and articulated a 'satisfactory explanation for its action including a rational connection between the facts found and the choice made ... [and] whether the decision was based on a consideration of the relevant factors.'"  *Id.* at 677, quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").  An agency determination is arbitrary and capricious "only when it is so *implausible* that it could not be ascribed to a difference in view or the product of agency expertise."  *Yogi Metals Group, Inc. v. Garland,* 38 F.4th 455, 458 (5th Cir. 2022), quoting *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211,

1215 (5th Cir. 1993) (emphasis added).  As the majority noted, this review,

although deferential, is not "toothless" and must be "searching and careful."  Op. at

13.

The majority applied the *State Farm* standard in strict accordance with its

requirements.  Op. at 12.  Petitioners agree this is the correct standard, Pet. vi-vii,

but argue that the majority applied a different standard.  Choosing to focus on a

single, three-word phrase, Petitioners assert that the majority issued a new edict,

under which an agency decision must be upheld if it is "most likely adequate."

Pet. at vi, quoting Op. at 16.  *See also* Op. at 31 (dissent, referencing the same

three-word phrase and similarly implying that the majority upheld EPA's view of

the evidence merely because it was "plausible").

But Petitioners' reliance upon a single word ("plausible") or phrase ("most

likely adequate") ignores the comprehensive analysis the majority performed *and*

the fact that this cherry-picked language is derived directly from the prior decisions

of this Court.  Just like the majority's description of EPA's determination as

"plausible" establishes that it meets the specific standard mandated by this Court

(*see* cases cited directly above), the majority doubtlessly used the phrase "most

likely adequate" because it comes directly from *State Farm*, where the Court

determined that the agency failed to present an "adequate basis" for its action there.  Op. at 16, citing *State Farm*; 463 U.S. at 43.

The majority here explained that even applying the deference prescribed by this Court's precedents (*see* discussion, *infra*), its review was "searching and careful," and that EPA was required to "examine the relevant data and articulate a satisfactory explanation for its action" if its nonattainment designation was to be upheld.  Op. at 12.  Nowhere does the majority opinion create a new standard under which an agency's determination need only be "most likely adequate," nor did it mechanically defer to EPA.

As purported proof for their position, Petitioners argue that the majority ignored the record and instead applied heightened deference to "excuse[] EPA's failure to review the available monitoring data as well as Luminant's modeling" and to "accept EPA's reliance on Sierra Club's modeling."  Pet. at 7.  *See also* Op. at 13-14 (reciting Petitioners' three points).  Instead, the majority closely scrutinized the record in *each* of these areas and concluded that EPA took the requisite hard look at the relevant factors, carefully weighed the competing monitoring and modeling evidence before it, and rationally explained its conclusion.

### A.     The Majority Correctly Found that EPA Did Not "Fail to Review the Available Monitoring Data"

During the designation process for Rusk/Panola Counties, Petitioners advocated reliance on monitoring from *another* county ("Longview monitor" in Gregg County).  Op. at 14-15.  EPA did not "fail[] to review the available monitoring data," Pet. at 7, and neither did the majority.  Instead, EPA explained that the Longview monitor, located 19 kilometers away, "was too far from Martin Lake to be of any use" in assessing air quality in Rusk/Panola Counties.  App.1333-34.  *See also* App.422-23 (explaining that concentrations of $SO_2$ are highest relatively close to sources and are much lower at greater distances); Op. at 15.  Not only did Petitioners not dispute EPA's findings, they relied on the lack of probative monitoring as their basis for recommending that Rusk/Panola Counties be deemed "unclassifiable," App.307-309, conceding that  "[Texas] does not have $SO_2$ monitors located in the area surrounding Martin Lake that would be expected to characterize the highest $SO_2$ concentrations from this facility."  App.1736.

The majority considered all positions, finding that EPA fully explained that monitoring data relied upon by Petitioners (and the dissent) was "not located in an area expected to receive the highest impact of $SO_2$ emissions" and that the revised AERMOD modeling had "more refined inputs for stack and emissions data,"

8

making this modeling "the best modeling available to serve as the basis for [its] decision." Op. at 16–17.  In finding that "EPA did not act arbitrarily or capriciously in its consideration of air quality monitoring data from the Longview airport," the majority concluded that "[b]y addressing the Petitioners' concerns and explaining why they were not merited with a plausible explanation, the EPA did not 'fail[] to consider an important aspect of the problem....'" *Id*.  *See also* Op. at 4 (explaining that Texas (and EPA) was required to assess emissions of $SO_2$ specifically from the Martin Lake power plant, since $SO_2$ is a natural byproduct of coal that facility burns); Op. at 16 (citing *BCCA Appeal Grp v. EPA*, 355 F.3d 817, 831 (5th Cir. 2003), which questioned the validity of comparing a model's output with data collected from a single distant monitor).  Petitioners show no error, let alone one warranting *en banc* review, by asserting that a single monitor 19 kilometers away from the Martin Lake facility so definitively undermined modeling as to preclude deference.  *E.g.*, Pet. at 5, asserting that a modeling scenario not even used as a basis for EPA's conclusions overestimated impacts by a factor of three, when compared to the monitor's values.

The dissent states that by failing to more thoroughly scrutinize the differences between data from the modeling and from the monitor 19 kilometers

away, EPA "failed to consider an important aspect of the problem and therefore violated the APA." Op. at 35; Pet. at 7. But this Court has already upheld EPA's NAAQS designations based on modeling even though it did not match up with monitoring. *BCCA Appeal Grp.*, 355 F.3d at 832. And as explained, there is no meaningful evidence of significant differences, since $SO_2$ monitoring must be located near the source, which eventually occurred here, *post-designation*. *See* pp. 13-14, *infra*. The majority upheld EPA's conclusions based on a careful review of the record, not by granting EPA unwarranted deference.

### B.     The Majority Correctly Found that EPA Did Not "Fail to Review Luminant's Modeling"

Petitioners next assert that EPA improperly ignored Luminant's modeling. The majority opinion explains why this claim is without basis.

First, Petitioners admit that Luminant used an unapproved model and that there is a process for having models approved *before* they may be used for designations. Doc. 00512133240 at 30. *See* 40 C.F.R. pt. 51, App. W §§ 3.2.1.b, 3.3 App. 422-23, 1321-23, 1341 (approval procedure). Petitioners never submitted their model (AERMOD with alternative AERLIFT and AERMOIST processors) for EPA approval. Nor did Petitioners submit the required statistical performance evaluation to support use of their alternative model. App.1290-93, 1320-28, 1340-

10

45, 1352-53. In addition, Luminant's modeling used non-regulatory AERMOD beta options that were not approved for use for regulatory purposes such as designations. App.1293, 1338-41, 1352-55 (describing *other* characteristics of this model in need of approval). Thus, EPA explained, "[t]here is no information to support that Luminant's modeling results with the AERLIFT and AERMOIST processors meet the requirements for models used in a regulatory decision." App.1292-93. *See also* App.1320-25.

Notwithstanding Petitioners' failure to rely on tested and objectively evaluated modeling, the majority explained that EPA *did* analyze Luminant's modeling in considering the Rusk/Panola Counties designation. Op. at 17-18, 21-22 (detailing how "EPA did consider Luminant's modeling and rejected it on several grounds" and "assessed the validity of Luminant's modeling in detail when it rejected the model"). As the majority further recognized, EPA found Luminant's modeling flawed because it: (a) used unapproved processors AERLIFT and AERMOIST, which sometimes resulted in large unsubstantiated changes in modeled concentrations; (b) misapplied options in AERMOD that change meteorological dispersion and wind speeds and direction which impacts air transport and generally lowers concentrations; and (c) relied on forecasted lower

11

emissions based on unenforceable future events, which this Court has found to be improper. *See Texas v. EPA*, 983 F.3d 826, 838 (5th Cir 2020). App.1286-93, 1320, 1340-58; Op. at 8.

In a detailed discussion, the majority explained that Luminant's modeling failed to comply with EPA's regulatory requirements for the use of air dispersion models in NAAQS designations and could not be relied upon. Op. 17-21. Only then did the majority conclude that, based on the "numerous [technical] reasons for its decision to reject Luminant's model," EPA's decision was not arbitrary and capricious. The majority did not ignore its review responsibilities and reject Luminant's modeling by deferring to EPA's technical determination.

## C.    The Majority Correctly Found that EPA Did Not Improperly Rely on AERMOD Modeling

EPA's regulations provide that "the model or technique applied to a given situation should be the one that provides the most accurate representation of atmospheric transport, dispersion, and chemical transformations in the area of interest." 40 C.F.R. pt. 51, App. W § 1.0.e. EPA applied this principle in finding that Sierra Club's use of EPA's regulatory AERMOD model provided "the most accurate representation" of these factors. App.1290-1312. The regulatory version

Sierra Club used has been shown to effectively model impacts of emissions from sources with tall stacks, such as the Martin Lake facility.  App.1293.

Petitioners assert that the application of AERMOD here was not peer reviewed.  Pet. at 4, 5.  But it is the *model* that is reviewed and approved for regulatory purposes, not the application of an already-approved model to a specific area.  40 C.F.R. pt. 51 Appendix W; App.1333-34.  Unlike Petitioners' model, the AERMOD model *has* been peer-reviewed, thoroughly tested, approved by EPA, and been in use for nearly two decades.  70 Fed. Reg. 68,218 (Nov. 9, 2005).  *See also* Appendix W at 4.2.2.1.

EPA scrupulously considered the aspects of Sierra Club's AERMOD modeling that Petitioners asserted were inadequate, detailing why such criticisms were misplaced and how Sierra Club's AERMOD modeling likely *underestimated* $SO_2$ concentrations in Rusk/Panola Counties.  App.1310-12, 1345-49, 1356-62. Ultimately, EPA found this modeling sound and generally "in accordance with the best practices outlined in the Modeling" Technical Assistance Document, which was not the case with Petitioner Luminant's modeling.  App.1296, 1352.  It is not surprising then that in proposing to install a monitor in 2017 actually placed close to Martin Lake facility (2.2. kilometers away), Texas used Sierra Club's prior

13

modeling to assess optimum monitor location, not Luminant's 2016 modeling. App.1597, 1641.

Furthermore, as part of the reconsideration process in 2021, EPA performed heightened technical analyses of Sierra Club's AERMOD modeling.  App.1580, 1622.  EPA found not only that the updated modeling "confirms our analysis of then-available data and the final December 13, 2016, nonattainment designations" (App.1643), it demonstrates that the March 2016 modeling *underestimated* the maximum modeled $SO_2$ design concentrations.  App.1638, 1648, 1654, 1657.  This was true even using Luminant's alternative inputs.  App.1656-60, 1665; Op. at 23. EPA's full analysis is set out at App.1236-1316, 1317-1365, 1556-1577, 1580-1620, 1622-1665.

EPA's designation of Rusk/Panola Counties was based on extensive evidence that the $SO_2$ NAAQS was not being attained, and the majority fully considered that evidence in affirming that designation; it did not apply "super-deference" to give EPA "a pass from [its] APA decision-making obligations."  Pet. at 9.  *See* Op. at 22-26.  And by addressing Petitioners' concerns and explaining why they lacked merit, EPA did not "fail[] to consider an important aspect of the

problem." *Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)

(quoting *State Farm*, 463 U.S. at 43).

### D. Petitioners May Not Rely on Extra-Record Recent Emissions Data to Obtain En Banc Review

In reconsidering its 2016 designation, EPA was required to continue to base

the designation on the emissions levels at that time, 2016. *Texas v. EPA*, 983 F.3d

at 838. Nevertheless, Petitioners assert for the first time in their en banc petition

that "recent air-quality data shows $SO_2$ levels in Rusk/Panola Counties is

approximately 67 ppb." Pet. at 6, citing Op. (dissent) at 48, n.6. No source is cited

for this statement and in any case it is irrelevant in judging whether there was

adequate support for EPA's 2016 designation

In fact, as reflected in the actual record on reconsideration, emissions in

2018 from the Martin Lake facility, the main $SO_2$ source for Rusk/Panola Counties,

actually *doubled* compared to emissions in 2016, when the Final Designation was

issued, rendering Martin Lake the single largest emitter of $SO_2$ in the United

States. App.1595-96, 1640-41. Moreover, after Texas finally placed a monitor

*near* the Martin Lake facility (2.2 kilometers away vs. the Longview monitor 19

kilometers away), $SO_2$ concentrations in 2018 to 2020 were measured at 103 ppb in

Rusk/Panola Counties, far exceeding the 75 ppb NAAQS.  App.1597, 1622, 1641-42.

Ultimately, if Texas demonstrates that the 75 ppb NAAQS is presently being attained, it may submit a technical showing to EPA requesting redesignation of Rusk/Panola Counties or seek a "Clean Data Determination."  *See* 42 U.S.C. §§ 7407(d)(3), 7505a.  Petitioners cannot instead claim that post-decision, outside-the-record, non-reviewed data, requires overturning a valid 2016 designation.

Petitioners' alternative view of the evidence does not equate to the majority having "cede[d] the judicial power to administrative agencies," Pet. at 11, nor does it "raise[] profound separation of powers and due process concerns."  *Id*. at viii. The majority responsibly considered all opposing views and made a sound and well-supported decision based on the technical evidence, not in spite of it.

## II.    THE COURT APPLIED WELL-SETTLED PRECEDENT OF THIS COURT AND THE SUPREME COURT AND CREATED NO CONFLICT

The majority expressly applied the APA's arbitrary and capricious standard of review, as interpreted by the Supreme Court in *State Farm* and numerous decisions of this Court, appropriately exercising the "most deferential review" to

scientific and technical determinations within the agency's expertise.  Op. 12-13, 16.  Therefore, there is no conflict and no basis for en banc review.

 As this Court has explained, in applying the *State Farm* test, "review under the arbitrary-and-capricious standard is 'extremely limited and highly deferential." Op. 12-13.  *See Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 243 (5th Cir. 2015); *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010).  A court may not "substitute [its] judgment for that of the agency," *Clean Water Action v. EPA*, 936 F.3d 308, 316 (5th Cir. 2019), and instead "simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423  (2021).

According to Petitioners, the error warranting en banc review is the majority's holding that "because EPA's designation was a 'technical decision' involving 'complex scientific data,' its decision-making must be reviewed 'with the *most deference*.'  Op.16."  Pet. at 6, 7 (emphasis added).  This is hardly an error, let alone one that conflicts with the decisions of this Court or the Supreme Court.

As this Court has explained, a court's review must be *"most deferential"* where, as here, the agency's decision is "based upon its evaluation of complex

scientific data within its technical expertise." *BCCA Appeal Grp,* 355 F.3d at 824,

quoting *Baltimore Gas and Elec. Co. v. NRDC*, 462 U.S. 87, 103 (1983) (emphasis

added).  And this "most deferential" standard specifically applies when EPA is

making factual findings.  *Texas v. EPA*, 983 F.3d at 841 (NAAQS designation

case, applying the "most deferential" standard where EPA is applying its technical

expertise); *Texas v. EPA*, 690 F.3d at 677; *Medina Cnty.,* 602 F.3d at 699 (court is

governed by "a narrow and highly deferential standard.").

Petitioners' request for en banc review is based on the majority's purported

misapplication of the review standard as it applies to questions of air quality

modeling, both Luminant's and Sierra Club's.  But this Court has explained that

this is precisely an area where such deference is to be accorded to EPA.  *Sierra*

*Club v. EPA*, 939 F.3d 649, 653 (5th Cir. 2019) ("We afford 'significant deference'

to agency decisions involving analysis of scientific data within the agency's

technical expertise.  The EPA's selection of a model to measure air pollution levels

is precisely that type of decision.").  The majority fully analyzed EPA's findings

and consideration of the full record, but to the extent it afforded deference to

EPA's findings, it simply applied the standard long applied by this Court.

18

Borrowing from a law review article, Petitioners claim the Court veered from this well-settled law and applied "super-deference."  Pet. at vii-viii.  But that article merely applies its characterization of "super-deference" to the level of deference *already* applied by this Court in its many cases.  It is not evidence that the majority set forth a "significant expansion of agency deference" for this Court to apply going forward, Pet. at 11; it is the opposite.

At bottom, the Petitioners' and the dissent's criticisms do not demonstrate that the Court adopted a new standard of review (or misapplied the well-settled standard); rather they disagree with the Court's conclusion that EPA's decision is a reasonable resolution of the complex technical issues before the agency that is adequately supported by the record.  The majority did not break any new ground or cede its judicial power to review the agency's action.  Pet. at 11.  Instead, after applying the required searching and careful review of each issue raised by Petitioners, the majority appropriately declined to substitute its judgment for EPA's, which it found to be considered and detailed.  Because the majority's opinion is not in conflict with the decisions of this Court or the Supreme Court, Petitioners' en banc petition should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Petition for en banc review should be denied.

Respectfully submitted,

April 15, 2024

TODD KIM
Assistant Attorney General

OF COUNSEL:

HALI KERR
MIKE THRIFT
U.S. Environmental Protection Agency
Office of General Counsel
William Jefferson Clinton Building
1200 Pennsylvania Ave., NW
Mail Code 2344A
Washington, D.C. 20460

AARON VARGAS
BROOKE VILLEGAS
U.S. Environmental Protection Agency
Office of the Regional Counsel
U.S. EPA Region 6
1201 Elm St., Suite 500
Dallas, TX 75270

*/s/ Perry M. Rosen*
PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044

*Counsel for Respondents*

20

## **CERTIFICATE OF COMPLIANCE WITH FILING REQUIREMENTS**

This response complies with the type-volume limitation of Fed. R. App. P. 35 (b)(2)(A) because it contains 3,862 words, excluding the parts of the response exempt under Fed. R. App. P. 32 (a)(5).  This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the response was prepared in proportionally spaced typeface using Microsoft Word 14 point Times New Roman type.  As such, this response also complies with Fifth Circuit Rule 32.

It is hereby certified that: (a) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (b) the electronic submission is an exact copy of the paper version, as required under Fifth Circuit rule 25.2.1; and (c) the document has been scanned by software maintained by the Department of Justice and is free from viruses.

 Date: April 15, 2024

/s/  *Perry M. Rosen*
Perry M. Rosen
Counsel for Respondents

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Response to Petition for Rehearing En Banc was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record for Petitioners and all other parties, who have registered with the Court's CM/ECF system.

Date: April 15, 2024

/s/ *Perry M. Rosen*
Perry M. Rosen
Counsel for Respondents