

September 3, 2024

VIA CM/ECF

The Honorable Lyle W. Cayce
U.S. Court of Appeals, Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

    **Re:** *State of Texas et al. v. EPA et al.*, **Case Nos. 17-60088 & 21-60673: Petitioners' Supplemental Letter Brief on the Significance of the Supreme Court's Decisions in *Loper Bright Enterprises v. Raimondo* and *Ohio v. EPA***

Dear Mr. Cayce:

Petitioners respectfully submit this joint letter brief in response to the Court's Order dated August 20, 2024, in the above-styled consolidated cases.

The panel majority's decision in this case is contrary to the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Ohio v. EPA*, 144 S. Ct. 2040 (2024). In this pair of decisions, the Supreme Court realigned the proper roles of courts and agencies in an agency review case. The decisions confirm that courts should not—and may not—invoke deference to abandon their Article III responsibilities to interpret the law and to conduct an independent and searching review of agency action. The panel majority's decision here—which applied the *ancien régime* of extreme deference to administrative agencies that followed *Chevron*—cannot stand in the face of the Supreme Court's decisions. This Court should grant the pending rehearing petition and vacate EPA's nonattainment designation.

*Loper Bright* requires rehearing because EPA's underlying action was predicated on *Chevron* deference. EPA here claimed a statutory ambiguity in the Clean Air Act that the agency sought to fill with its own "reasonable" interpretation. With *Loper Bright*, "*Chevron* is overruled," and "[c]ourts must exercise their independent judgment in deciding whether an

1901 Sixth Avenue North
Suite 1500
Birmingham, AL 35203-4642
balch.com

P.O. Box 306
Birmingham, AL 35201

ALABAMA | FLORIDA | GEORGIA | MISSISSIPPI | TEXAS | WASHINGTON, DC

The Honorable Lyle W. Cayce
September 3, 2024
Page 2

agency has acted within its statutory authority, as the APA requires." 144 S. Ct. at 2273. The panel majority here failed in that obligation.

*Ohio* requires rehearing because the panel majority excused EPA's "exclusion of the monitoring data" submitted by Texas that showed attainment and let EPA skate with only a "plausible explanation" that was "most likely adequate." Op. at 16. By giving EPA "the most deference" in this regard (*id.*), the panel majority abdicated its responsibility to "*ensure*" that EPA provides "a *satisfactory* explanation for its action," as required by the APA's arbitrary or capricious standard and confirmed in *Ohio*. 144 S. Ct. at 2053 (cleaned up) (emphases added).

## I. *Chevron* Deference Was the Predicate for EPA's Underlying Action and Its Defense in this Case

EPA's action at issue here—its designation of Rusk and Panola Counties, Texas, as nonattainment with the sulfur dioxide ($SO_2$) National Ambient Air Quality Standard ("NAAQS")—was premised on the agency's interpretation of a statutory provision that it claimed was ambiguous. Specifically, the agency's position in the underlying rulemaking and before this Court was that "the statutory requirement for EPA to make designations 'on the basis of available information'" in the definition of "unclassifiable" in 42 U.S.C. §7407(d)(1)(A)(iii) "is ambiguous and EPA therefore may interpret the statutory language as it sees fit, as long as its interpretation is reasonable." EPA Br. at 29 (cleaned up); *see also id.* at 53 ("EPA reasonably interpreted [42 U.S.C. §7407(d)(1)(A)(iii)].").

In the proceedings before the agency, EPA saw "fit" to interpret this statutory phrase to allow it to *ignore* all data that contradicted its preferred outcome—specifically, the actual measured data collected closest to Luminant's power plant and Luminant's own modeling, both of which showed a $SO_2$ concentration in Rusk and Panola Counties less than the 75-ppb legal limit. Op. at 8, 35. Instead of basing the designation on all available information as required by the statute—which would have required a designation of "unclassifiable"— EPA based the designation only on the Sierra Club's modeling, which predicted nearly triple the concentration actually recorded. Pet. App. at 70 (Figure 1), 309; *see also* Op. at 34 (Elrod, J., dissenting).

Petitioners' principal argument in their opening merits brief to the panel was that "EPA's nonattainment designation for Rusk and Panola Counties is in direct conflict with the plain language of the Clean Air Act"—specifically 42 U.S.C. §7407(d)(1)(A)(iii). Pet. Br. at 25. As Petitioners explained in their brief, under that provision, "where the information at the time

of designation does not clearly demonstrate that the area is in attainment or nonattainment[,] the statutory language *requires* a designation of unclassifiable." *Id.* (emphasis added). Petitioners' opening brief went on to detail the various ways in which "EPA ignored the plain statutory language" and the "available" information, including "the air quality monitoring data available at the time" and the "modeling analysis submitted by Luminant." *Id.* at 26.

In response to Petitioners' arguments and in defense of its nonattainment designation, EPA repeatedly invoked *Chevron* deference in this Court. EPA Br. at 23. According to EPA's brief, "[i]f the statute is 'silent or ambiguous with respect to the specific issue,' the Court must defer to the agency's interpretation so long as it is 'based on a permissible construction of the statute.'" *Id.* (citing and quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984)). "'If the agency's interpretation is reasonable, it will be upheld,'" EPA argued, "even if the court might have come to a different judgment." *Id.* (citing and quoting *BCCA Appeal Group v. EPA*, 355 F.3d 817, 824-25 (5th Cir. 2003)).

As relevant here, EPA relied extensively on *Chevron* and its progeny in direct response to Petitioners' argument that the plain language of 42 U.S.C. §7407(d)(1)(A)(iii) required an "unclassifiable" designation for Rusk and Panola Counties. EPA Br. at 52-53. EPA claimed to have "reasonably interpreted this provision" to give the agency discretion in deciding whether "to apply the unclassifiable designation" based on the agency's "due diligence." *Id.* at 53. EPA's "construction of the statute" on this point, its brief contended, was entitled to "broad" and "great deference." *Id.* at 52 (cleaned up). "Given the deference to be accorded EPA," the agency argued, "the Final Designation should be upheld." *Id.* at 53.

Tellingly, the most-cited authority in EPA's brief to this Court was the D.C. Circuit's decision in *Mississippi Commission on Environmental Quality v. EPA*, 790 F.3d 138 (D.C. Cir. 2015), a progeny of *Chevron*. In that decision, the D.C. Circuit held that the phrase "on the basis of available information" in 42 U.S.C. §7407(d)(1)(A)(iii) was "ambiguous" and "EPA therefore may interpret the statutory language as it sees fit, as long as its interpretation is reasonable." *Miss. Comm'n*, 790 F.3d at 154-55 (citing *Chevron*, 467 U.S. at 845). In support of its request for *Chevron* deference, EPA's brief to this Court cites *Mississippi Commission* thirteen times, more than any other decision.

## II. The Panel Majority's Decision Granted EPA's Request for "the Most Deference"

A divided panel of this Court denied the petitions for review of EPA's nonattainment designation. Op. at 2-3. Granting EPA's request for an "extraordinary level of deference"

The Honorable Lyle W. Cayce
September 3, 2024
Page 4

(EPA Br. at 48), the panel held that because EPA's designation was a "technical decision" involving "'complex scientific data,'" its decision-making must be reviewed "with the most deference." Op. at 16 (cleaned up).

The panel majority's decision acknowledged Petitioners' statutory argument—that EPA's nonattainment designation "violates the CAA because the evidence available at the time showed attainment," *see id.* at 12, but sidestepped the issue. Instead, the panel majority proceeded under EPA's interpretation of the statute that the agency was permitted to disregard "available information," and thus the panel examined only whether EPA's justification for doing so was "arbitrary, capricious, [or] an abuse of discretion." *Id.* at 12-13 (cleaned up).

In conducting its arbitrary or capricious review, the panel decision held that the Court was required to view EPA's action with "the most deference" because it was a "technical decision" involving "'complex scientific data.'" *Id.* at 16 (citing and quoting *BCCA Appeal Grp.*, 355 F.3d at 834). Applying this heightened standard of deference, the majority excused EPA's failure to account for the available monitoring data and Luminant's modeling, both of which showed compliance and contradicted Sierra Club's modeling—which was the sole basis for EPA's designation. *Id.* Instead, the panel majority was satisfied that EPA had merely provided a "*plausible* explanation" that "was *most likely adequate.*" *Id.* (emphases added).

Judge Elrod dissented, finding that "the majority opinion applies a form of heightened deference that is inconsistent with our precedent and the APA." *Id.* at 49 (Elrod, J., dissenting). The dissent "seriously doubt[ed] that an agency should be given extra deference just because the case involves a technical subject," as "[n]either the APA nor the Supreme Court's interpretation of it establishes any such distinction." *Id.* at 32-33 (Elrod, J., dissenting). Instead, courts "should simply ask the same question we ask in any other APA case. Did the agency fail to address any important consideration? *See State Farm*, 463 U.S. at 43. Are there significant gaps in its explanation? *See Encino Motorcars*, 579 U.S. at 222; *Sw. Elec. Power Co.*, 920 F.3d at 1018-19." *Id.* at 33 (Elrod, J., dissenting). Judge Elrod ultimately concluded that the answers to those questions compel the conclusion that EPA violated the APA in multiple respects. *Id.* at 34-48.

### III.  *Loper Bright* and *Ohio* Require Rehearing in this Case

The panel majority decision cannot stand in the face of the Supreme Court's decisions in *Loper Bright* and *Ohio*. The decisions address two distinct components of the APA's judicial review provision, 5 U.S.C. §706, both of which are implicated in the present case. In *Loper*

*Bright*, the Supreme Court addressed the manner in which, in all cases under the APA, "the reviewing court shall decide all relevant questions of law." *Id.* In *Ohio*, the Supreme Court addressed the manner in which a reviewing court determines whether an agency action is "arbitrary, capricious, [or] an abuse of discretion" and thus "shall" be held "unlawful and set aside." *Id.* §706(2)(A).

*Loper Bright* is implicated in this case because, as discussed above, EPA's action was predicated on the agency's contention that the phrase "on the basis of available information" in 42 U.S.C. §7407(d)(1)(A)(iii) was "ambiguous" and, based on *Chevron*, "EPA therefore may interpret the statutory language as it sees fit, as long as its interpretation is reasonable." EPA Br. at 29 (cleaned up). But in *Loper Bright*, the Supreme Court unequivocally held that "*Chevron* is overruled." 144 S. Ct. at 2273. Following *Loper Bright*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* Instead, deploying "traditional tools of statutory construction," the court's task is "to resolve statutory ambiguities." *Id.* at 2266. That remains true even if "an ambiguity happens to implicate a technical matter," since "many statutory cases call upon courts to interpret the mass of technical detail that is the ordinary diet of the law." *Id.* at 2267 (cleaned up).

In contravention of *Loper Bright*'s direction, the panel majority here did not "exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 2273. Here, EPA claimed the authority—predicated on an alleged ambiguity in the statutory definition of "unclassifiable" in 42 U.S.C. §7407(d)(1)(A)(iii)—to interpret that definition to permit the agency to disregard information presented to the agency that showed the area could not be classified as nonattainment. Petitioners challenged EPA's interpretation as contrary to law, arguing that "the statutory language requires a designation of unclassifiable" "in the face of admittedly conflicting information about the conditions in Rusk and Panola Counties." Pet. Br. at 25-26. The panel was thus obligated to "decide [this] relevant question[] of law" and "interpret [this] statutory provision[.]" 5 U.S.C. §706.

The panel majority instead avoided this obligation, choosing instead to treat EPA's decision as "the type of technical decision that this court has said should be viewed with the most deference." Op. at 16 (citing *BCCA Appeal Grp.*, 355 F.3d at 834). But *Loper Bright* makes clear that "Congress expects courts to handle technical statutory questions." 144 S. Ct. at 2267. "[E]ven when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and

given it to the agency." *Id.* To the extent that *BCCA Appeal Group*—which itself was predicated on *Chevron* and pervades the panel majority's decision—says otherwise, it was "wrongly decided." *Id.* at 2273 (cleaned up).

Further, there is no "express[] delegat[ion]" of authority to EPA "to give meaning to" the statutory terms in 42 U.S.C. §7407(d)(1)(A). *Id.* at 2263. Indeed, that statutory provision is directed to "the Governor of each State." 42 U.S.C. §7407(d)(1)(A). Thus, under a plain reading of the statute, the Governor of each State, not EPA, will identify the "available information" for purposes of NAAQS designation, *id.*, consistent with the State's "primary" authority under the statute, *id.* §7401(a)(3). While EPA may make "necessary" "modifications" to the Governor's designations, EPA may only "promulgate the designation" in the first instance when the Governor "fails to submit" the State's designation. *Id.* §7407(d)(1)(B)(ii). Here, the State of Texas timely submitted its designation for Rusk and Panola Counties to EPA, identifying "data gathered from air quality monitors" as available information, Op. at 6, which EPA subsequently disregarded, *id.* at 34-35 (Elrod, J., dissenting).

Under the correct standard of review, this case is easily decided based on the statutory question. This Court has previously had no difficulty in interpreting and applying the terms "attainment" and "nonattainment" in 42 U.S.C. §7407(d)(1)(A), without deference and consistent with the Court's obligation under the APA to decide all relevant questions of law. *See Texas v. EPA*, 983 F.3d 826, 838 (5th Cir. 2020). Indeed, the Court found that these definitions are "concrete terms" that are interpreted using traditional tools of statutory construction. *Id.* The term "unclassifiable" is no different.

*Ohio* is implicated in the present case because EPA "exclu[ded] the monitoring data" relied on by Texas; "fail[ed] to investigate the cause of a known discrepancy" between the monitoring data and Sierra Club's modeling; and "fail[ed] to assess" the competing modeling submitted by Luminant that showed attainment. Op. at 16; *id.* at 35, 42 (Elrod, J., dissenting). *Ohio* confirms these failures by the agency do not pass muster under the APA's arbitrary or capricious standard.

In *Ohio*, the Supreme Court held that similar failures by EPA, also in the Clean Air Act context, were likely arbitrary and capricious, and it applied a starkly different analysis than the panel majority here. The Supreme Court explained that "[a]n agency action qualifies as 'arbitrary' or 'capricious'" under the APA "if it is not reasonable and reasonably explained." 144 S. Ct. at 2053 (cleaned up). Thus, "an agency cannot simply ignore 'an important aspect of the problem.'" *Id.* (quoting *State Farm*, 463 U.S. at 43)). Importantly, under this standard,

the Court "must *ensure*, among other things, that the agency has offered 'a *satisfactory* explanation for its action.'" *Id.* (quoting *State Farm*, 463 U.S. at 43) (emphases added). In finding that EPA had failed to meet this standard in *Ohio*, the Supreme Court independently examined EPA's proffered explanation for its action, finding that "EPA's response did not address the applicants' concern so much as sidestep it" and explaining that "awareness is not itself an explanation." *Id.* at 2054-55.

The panel majority in this case did the opposite—instead of ensuring that EPA offered a satisfactory explanation for its "exclusion of the monitoring data," Op. at 16, it viewed EPA's exclusion as "the type of technical decision that this court has said should be viewed with the most deference." *Id.* Under this erroneous standard, the panel majority abdicated its obligation to review the substance of EPA's explanation and asked only whether EPA had provided a "plausible explanation" that "was most likely adequate." *Id.*[1] The panel majority's approach was thus contrary to *Ohio*, as well as this Court's precedent applying a hard-look review under the APA's arbitrary or capricious standard. *See, e.g., All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 270 (5th Cir. 2023), *rev'd for lack of standing and remanded sub nom. FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) (Ho, J., concurring in part and dissenting in part) ("Congress could have exempted the [agency] from APA review[,] [b]ut it didn't[.]"); *see also Sw. Elec. Power Co.*, 920 F.3d at 1015, 1018-19 (citing *State Farm* and holding that "shortcomings in the agency's explanations" for chosen pollution-control technology violated the APA).

*Ohio* further confirms that, contrary to the panel majority's belief, an agency's supposed "expertise" does not exempt the agency's action from hard-look review or allow the agency to skate with a superficial or "plausible explanation." As explained in the pending petition for rehearing, the panel majority's reading of *Baltimore Gas & Electric Co. v. NRDC*, 462 U.S. 87 (1983), to require the Court to give EPA what amounts to super deference under the arbitrary or capricious standard was a misreading of that decision and contrary to subsequent Supreme Court and Circuit precedent. *See* Doc. 366 at 7-10. *Ohio* confirms this error. In *Ohio*, EPA invoked its "practical scientific judgment for which the Agency has primary expertise" and requested "deferen[ce]" under "the arbitrary-and-capricious standard."

---

[1] "Plausible" per Merriam Webster means: "1: superficially fair, reasonable, or valuable but often deceptively so; 2: superficially pleasing or persuasive." *Plausible*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/plausible?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Aug. 27, 2024).

Response of Federal Respondents in Opposition to Applications for Stay, 3, *Ohio, et al. v. EPA, et al.*, No. 24A117(U.S. Aug. 19, 2024). The Supreme Court was not convinced.

*\*\*\**

For these reasons, and the reasons detailed in the pending rehearing petition, the Court should grant rehearing and vacate EPA's nonattainment designation for Rusk and Panola Counties, Texas.

|  | Respectfully submitted, |
|---|---|
|  | s/ P. Stephen Gidiere III |
| Allyson N. Ho | P. Stephen Gidiere III |
| Gibson, Dunn & Crutcher LLP | C. Grady Moore III |
| 2001 Ross Avenue, | Julia B. Barber |
| Suite 2100 | Balch & Bingham LLP |
| Dallas, Texas 75201 | 1901 6th Ave. N., |
| (214) 698-3100 | Suite 1500 |
| AHo@gibsondunn.com | Birmingham, AL 35203 |
|  | (205) 257-8100 |
|  | sgidiere@balch.com |
|  |  |
|  | Stephanie Z. Moore |
|  | Executive Vice President & General Counsel |
|  | Daniel J. Kelly |
|  | Senior Vice President & Deputy General Counsel |
|  | David W. Mitchell |
|  | Managing Counsel, Environmental |
|  | Vistra Corp. |
|  | 6555 Sierra Drive |
|  | Irving, Texas 75039 |

*Counsel for Petitioners Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Aaron L. Nielson<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | s/ William F. Cole<br>William F. Cole<br>Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | William.Cole@oag.texas.gov<br><br>*Counsel for the Petitioners State of Texas and Texas Commission on Environmental Quality* |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this document complies with this Court's directive issued on August 20, 2024, because the letter does not exceed 10 pages.

Dated: September 3, 2024

                                        s/ P. Stephen Gidiere III
                                      P. Stephen Gidiere III

                                      *Counsel for Petitioners Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, a copy of the foregoing document was served electronically through the Court's CM/ECF system on all registered counsel.

s/ P. Stephen Gidiere III
P. Stephen Gidiere III

*Counsel for Petitioners Luminant Generation Company LLC, Big Brown Power Company LLC, Sandow Power Company LLC, and Luminant Mining Company LLC*
