

**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Environmental Defense Section*  *Telephone (202) 353-7792*
*P.O. Box 7611*  *Facsimile (202) 514-8865*
*Washington, DC  20044*

Sept. 3, 2024

Honorable Lyle W. Cayce
U.S. Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA 70130

    Re:  *State of Texas, et al. v. EPA, et al.*, No. 17-60088: Response to Court's directive to address *Loper Bright Enterprises v. Raimondo* and *Ohio v. EPA*

Dear Mr. Cayce:

    Respondent, the United States Environmental Protection Agency ("EPA"), hereby responds to the Court's directive (Doc. 393) to submit a letter brief that addresses "the significance, if any" of the Supreme Court's recent decisions in *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024) ("*Loper*") and *Ohio et al. v. EPA, et al.*, 144 S.Ct. 2040 (2024) ("*Ohio*"), to the pending petition of Luminant Generation Company, LLC and its affiliated companies ("Luminant") seeking rehearing en banc.[1]  Neither case holds any significance for this Court's consideration of the en banc petition, except to expressly *affirm* the principles applied by the majority in this case (the "Panel").

    As detailed more fully below, while *Loper* revised the manner in which courts are to consider an agency's interpretation of statutory provisions, it reaffirmed decades of precedent holding that judicial review of factfinding is governed by the deferential arbitrary and capricious standard. 144 S.Ct. at 2258.  The en banc petition challenges only EPA's technically-based factual determination, *not* an issue of statutory interpretation.  Thus, Loper only supports the Panel's decision.  Separately, the Supreme Court's decision in *Ohio* simply applied well-established law requiring agencies to respond to significant comments submitted to an agency. Here, EPA thoroughly addressed all of the comments and submissions of Petitioners and, in concluding that EPA's decision was neither arbitrary nor capricious, the Panel correctly applied well established – and unaltered – precedent to the facts of this case.

---

[1] The other original Petitioners, the State of Texas and the Texas Commission on Environmental Quality, neither filed an en banc petition nor joined in Luminant's petition.

**Background**

Petitioners challenged EPA's finding under 42 U.S.C.§ 7407 that the area near the Martin Lake Power Station next to Rusk and Panola Counties was in nonattainment with the 2010 National Ambient Air Quality Standard ("NAAQS") for sulfur dioxide ($SO_2$), which is violated when concentrations of $SO_2$ in the ambient air exceed 75 parts per billion ("ppb"). EPA's nonattainment finding was not unexpected, given that Martin Lake was the largest industrial emitter of $SO_2$ in the United States. Nevertheless, EPA made this determination only after considering the relevance of readings from a distant monitor and reviewing all modeling data characterizing the area's air quality, including that presented by Luminant. EPA ultimately relied on a modeling analysis using an air dispersion model long approved by EPA for just this purpose and used throughout the United States. The modeling, which was performed by Sierra Club, was run several times, in order to ensure that questions or alternative inputs raised by EPA *and* Luminant were addressed in the modeling. Doc. 385 (EPA En Banc Opp.) at 3.

The Panel carefully evaluated all parties' arguments and the detailed record, conducting the "searching and careful" review required in challenges to agency orders or determinations. *Texas v. EPA*, 91 F.4th 280, 291 (5th Cir. 2024). The Panel did not, as Petitioners suggest, relinquish its review authority to EPA or depart from well-settled precedent applicable to review of agency actions. Instead, taking the required "hard look" at the evidence and EPA's consideration thereof, the Panel performed a thorough review of the record and made its own independent judgment based on such review, fully explaining why EPA's ultimate determination that Rusk and Panola Counties were in nonattainment with the $SO_2$ NAAQS was sound, well-supported, and neither arbitrary nor capricious.

**I.   *Loper* Fully Supports Denial of the En Banc Petition**

The sole issue before this Court in the en banc petition is whether the Panel conducted the required "hard look" review of EPA's technical evaluation of the scientific record in upholding EPA's determination that Rusk and Panola Counties were in nonattainment with the $SO_2$ NAAQS. This issue does not implicate *Loper's* ruling regarding deference to federal agencies interpreting statutory provisions. Instead, *Loper* expressly supports the Panel's application of the deferential arbitrary and capricious standard of review to EPA's factfinding in this case.

In *Loper*, the Supreme Court concluded that the deference accorded to agencies in interpreting *statutory* provisions that was announced in *Chevron U.S.A v. NRDC*, 467 U.S. 837 (1984), should no longer apply. The Court explained that the Administrative Procedure Act ("APA") is the statute that generally dictates how review of agency action is to proceed and that the APA "specifies that courts, not agencies, will decide '*all* relevant *questions of law*' arising on review of agency action." 144 S.Ct. at 2261, citing 5 U.S.C. § 706 (emphasis in original and added). The Court declared that "courts need not and under the APA may not defer to an agency interpretation … because a statute is ambiguous." *Id.* at 2273.

The Court in *Loper* made clear that its holding applied only to the issue of whether an agency is entitled to deference with regard to its interpretation of a *statute*. 144 S.Ct. at 2254, 2258, 2259, 2260, 2266. Accordingly, the Supreme Court in *Loper* did one thing: it overturned

the *Chevron* doctrine, which had provided that when a statute is ambiguous, the interpretation applied by the agency is to be accorded deference. 144 S.Ct. 2270 ("The defining feature of [*Chevron's*] framework is the identification of statutory ambiguity."). Petitioners agree that this is the holding of *Loper*. Doc. 388, Rule 28(j) letter ("In *Loper*, the Supreme Court overruled the doctrine in *Chevron*, which required courts to defer to federal agencies' interpretations of ambiguous *statutory provisions*. Slip op. at 35." (Emphasis added).

Relevant here, *Loper* does not overturn or modify the myriad decisions of this Court and others that have long applied deference to technically-based factual determinations made by expert agencies. *See* Doc. 00516213620 (EPA Merits Br.) at 46-48. To the contrary, the Court expressly confirmed that a court *must*, under the express wording of the APA, apply deference to such agency determinations. The Court in *Loper* differentiated between the duty of a court to make determinations on the meaning of a statute, which it describes as "questions of law," from findings of fact on technical issues made by a federal agency. As the Court explained, the Supreme Court has "treated agency determinations of *fact* as binding on the courts, provided that there was 'evidence to support the findings.'" 144 S.Ct. at 2258 (emphasis in original) (quotation omitted). The Court then made clear that with regard to factual findings, the APA *requires* a court to accord deference to an agency's findings. 144 S.Ct. 2261-62 (stating that while 5 U.S.C. § 706 "prescribes no deferential standard for courts to employ answering those legal questions … Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential." (emphasis in original). *See also* 144 S.Ct. at 2258 (further explaining that the Supreme Court did not extend the type of deference on agency "findings of fact" to "the interpretation of the meaning of statutes.").

Luminant's en banc petition raises a single issue. In explaining where the Panel supposedly erred such that en banc review is purportedly appropriate, Petitioners declare: "[T]he panel held that because EPA's designation was a 'technical decision' involving 'complex scientific data,' its decision-making must be reviewed 'with the most deference.'" En Banc Pet. at 6, citing Op. at 16. *See also id*. at 11 (conceding that "the particular deference issue presented here [ ] implicates the proper roles of courts and agencies when scientific matters are involved."); *id*. at vi. ("Now, whenever an administrative agency invokes its 'technical expertise' or use of 'complex scientific data,' its decision-making process is entitled to a heightened level of deference…."); *id*. at vii (challenging deference accorded by the Panel to factual determinations based on EPA's "technical expertise.").

In its en banc petition, Luminant does not argue that the Panel applied *Chevron* deference, which again applies only to issues of statutory interpretation. Indeed, nowhere does Luminant's en banc petition argue or even imply that either EPA or the Panel misapplied or misinterpreted *any* provision of the Clean Air Act or any other statute. Thus, it is clear that Petitioners are not challenging the type of deference expressly considered in *Loper*, deference to an agency's interpretation of a statute. Instead, Petitioners' en banc petition challenges *only* the Court's application of deference to the Agency's technical/factual determinations; the type of deference where the Court in *Loper* expressly stated that the APA "*does* mandate" deferential review. 144 S.Ct. at 2261 (emphasis in original).

As to the factual determinations that are the subject of Luminant's en banc petition, both the Supreme Court and this Court have long made clear that courts are to accord deference to an agency's factual findings within its expertise. *Balt. Gas and Elec. Co. v. NRDC*, 462 U.S. 87, 104 (1983). And, as this Court explained, citing *Baltimore Gas and Elec.,* such review is at its "most deferential" where, as here, the agency's decision is "based upon its evaluation of complex scientific data within its technical expertise." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 824 (5th Cir. 2003). *See also Texas v. EPA*, 983 F.3d 826, 841 (5th Cir. 2020); *Sierra Club v. EPA*, 939 F.3d 649, 653 (5th Cir. 2019) ("We afford 'significant deference' to agency decisions involving analysis of scientific data within the agency's technical expertise."). In such situations, "EPA's decision 'is entitled to a presumption of regularity.'" *Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 934 (5th Cir 1998). *See also Medina Cnty. Env'tl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010). And there can be no doubt that this level of deference applies specifically to EPA's attainment/nonattainment designations under the NAAQS program. *Texas v. EPA*, 983 F.3d at 841; *ATK Launch Sys., Inc. v. EPA,* 669 F.3d 330, 336 (D.C. Cir. 2012); *Catawba Cnty. v. EPA*, 571 F.3d 20 (D.C. Cir. 2009). *Loper* expressly reaffirms the myriad decisions of this Court and others that have long applied deference to technically-based *factual* determinations made by expert agencies.

Even though Luminant raises no statutory interpretation issues in its en banc petition, it may attempt to use its response to the Court's directive to address *Loper* to instead resurrect its limited claims made to the Panel related to legal/statutory interpretation issues that Petitioners argued to the Panel. None of those claims have been submitted to the full Court for proposed en banc review, and thus they are forfeited. But even if such claims had been made, the core holding of Loper, that *Chevron* deference regarding an agency's interpretation of statutory provisions is no longer to be applied, has no application to any legal/statutory interpretation issues in *this* case, because the Panel never applied *Chevron* deference. Although Petitioners asserted before the Panel that "EPA misconceived the law and its legal authority in issuing the designation," 91 F.4th at 290, the Panel soundly decided this and all legal issues raised by Petitioners *without* relying on *Chevron.* The Panel found in each case that the statutory provision at issue was clear on its face, i.e., applying the best reading of the statute without applying deference to EPA's view. *Id*. at 291, 300-301.

As outlined above, *Loper* is based on the express wording of the APA that directs courts to make legal determinations of what a statute requires, to be based on the best reading of the statute, without deference to an agency's view. The Court explained that depending on the legal question, an agency may not have a special expertise as to the particular statutory question at issue, still noting that the agency's experienced view may be persuasive. *Loper*, 144 S.Ct. at 2266-67. In contrast, Congress determined that agencies are eminently qualified to make determinations on technical issues and related factual determinations that are within their expertise, while courts generally lack the expertise to make independent technical determinations. That is why, as the Court reiterated in *Loper,* the APA "*does* mandate that judicial review of agency policymaking and factfinding be deferential." *Id*. at 2262 (Emphasis in original). Accordingly, *Loper* has no effect on the Panel's decision, except to confirm one more reason why the en banc petition should be denied: that the APA directs that EPA *must* be accorded deference as to its technical determinations.

**II.    *Ohio* Presents no New Holding Applicable to This Case**

Through the submittal of its Rule 28(j) letter, which is designed to notify the Court of new relevant precedent, Luminant presents the Supreme Court's decision in *Ohio* as some new doctrine that affects this case. But *Ohio* announced nothing new. As Luminant explains in its letter, "[i]n *Ohio*, the Supreme Court confirmed that under the APA 'an agency cannot simply ignore "an important aspect of the problem,"'" quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mu.t Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). Thus, the proposition that Luminant presents as something new for this Court to consider was announced by the Supreme Court forty-one years ago. And according to Westlaw, the headnote that includes this statement has been cited over 4,000 times. Unsurprisingly, the exact language that Luminant offers as a purportedly new requirement that the full Court should take notice of has been repeated by this Court numerous times. *See, e.g., All. for Hippocratic Med. v. U.S. Food & Drug Adm.*, 78 F.4th 210, 245 (5th Cir. 2023); *Fath v. Tex. Dep't of Transp.*, 924 F.3d 132, 136 (5th Cir. 2018).

Equally unsurprising is the fact that Luminant has already presented the exact language announced by the Supreme Court four decades ago in its merits briefs, *twice*. Doc. 00516133240 (Petitioners' Merits Br.) at 23; Doc. 00516260517 (Petitioners' Reply Br.) at 4. *And* Luminant has already presented its argument on this point in its en banc petition. Doc. 366 (En Banc Pet.) at 9-10. Thus, *Ohio* changed nothing, and Luminant merely uses *Ohio* as an excuse to reassert the identical argument it made to the Panel and the full Court based on the doctrine it already cited. Merely citing one more case for a proposition that has already been cited to this Court multiple times, has been relied upon by Luminant in its en banc petition, and on which there is *no disagreement*, is not a basis for rearguing the same point.

In any event, as explained in EPA's opposition to the en banc petition, the panel properly applied *State Farm*, and neither *Ohio* nor the proposition Luminant cites it for changes anything regarding this case. *Ohio* involved applications for a stay pending review of a separate EPA action under the Clean Air Act's Good Neighbor provision. The Court held that the applicants were likely to prevail because EPA's final rule did not adequately address certain comments raised by commenters. *Ohio*, 144 S. Ct. at 2054. Therefore, the application of deference to agency technical determinations was not a focus of the decision. In sharp contrast, here EPA comprehensively addressed Petitioners' comments and fully explained why the significantly flawed monitoring and modeling data Petitioners presented did not support a different finding, all of which was fully reviewed by the Panel.

EPA does not dispute that an agency cannot ignore an important aspect of the problem being addressed in an agency decision. As EPA explained to the Panel, and again in response to the en banc petition, that did not occur here. Nevertheless, Luminant alleges that EPA ignored an important aspect of the problem as follows: "[a] The agency 'fail[ed] to investigate the cause of a known discrepancy' between the actual monitoring data and Sierra Club's modeling; [b] failed to assess the competing modeling submitted by Luminant that showed attainment; and [c] 'move[d] the scientific goalposts' with its shifting evaluation of Sierra Club's admittedly erroneous modeling." En Banc Pet. at 10 (quotations omitted). Luminant is incorrect on all three points.

A. **EPA Considered Purported Discrepancies Between the Modeling it Relied Upon and Monitoring From 19 Kilometers Away**

Concentrations of $SO_2$ are highest relatively close to sources and are much lower at greater distances, and thus a single distant monitor often fails to provide reliable data on emissions in the area being addressed, in this case the portions of Rusk and Panola Counties near the Martin Lake Power Station. R.203 at 5-6 (App. 422-23). EPA examined the monitoring from the Longview monitor located in another county that Petitioners relied upon and determined that, in fact, it "was too far from Martin Lake to be of any use" in assessing $SO_2$ concentrations in Rusk and Panola Counties. R.438 at 17-18 (App. 1333-34). Not only did Petitioners not dispute EPA's findings, they conceded that "[Texas] does not have $SO_2$ monitors located in the area surrounding Martin Lake that would be expected to characterize the highest $SO_2$ concentrations from this facility." R.478, Ex. C at 7 (App. 1736). And the Panel agreed, concluding that "[b]y addressing the Petitioners' concerns and explaining why they were not merited with a plausible explanation, the EPA did not 'fail[] to consider an important aspect of the problem....'" 94 F.4th at 293. I *Id.*

In its Rule 28(j) letter, Luminant presses its argument that EPA should have used monitoring from the Longview site to validate the modeling it relied upon. First and foremost, as the Panel found, the argument that EPA should have conducted validation testing of its model against real world monitoring output from the Longview monitor was forfeited by Petitioners, as it was raised for the first time in Petitioners' reply brief. 91 F.4th at 298 n. 7. That argument may no more be addressed en banc than it could by the Panel.

Moreover, even if one were to now consider Luminant's argument, it is based on a supposed discrepancy that does not exist. Petitioners' argument regarding a discrepancy is based on Sierra Club's 2015 modeling that used *allowable* emission rates for comparison with the Longview monitor, not *actual* emissions. EPA Merits Br. at 39 n.3. Accordingly, EPA did not rely on this initial version of Sierra Club's modeling but instead relied on Sierra Club's revised 2016 modeling of more recent *actual* emissions. 91 F.4th at 292; R.144 (App. 307-324), 434 at 74 (App. 1309). As the Panel observed, "[t]he revised modeling from Sierra Club had 'more refined inputs for stack and emissions data,'" 91 F.4th at 293. The Panel further explained that "Petitioners also do not argue that the version of Sierra Club's model that EPA [actually] relied upon unreasonably exceeded the actual values, nor do they cite where in the record the answer may be." *Id.* at 292 n. 2. And as to *actual* emission rates, when Petitioners finally placed a monitor near the Martin Lake Power Station (2.2 kilometers away), it showed an $SO_2$ design concentration of 103 ppb, far in excess of the 75 ppb standard. R.472 Enclosure 1 at 16 (App. 1597); R.473 Enclosure 1 at 19 (App. 1642).

Finally, Petitioners cite to *BCCA Appeal Grp,* 355 F.3d at 831, for the proposition that EPA should test its modeling against some real-world monitoring. But nothing in *BCCA* says that such testing is required. Indeed, this Court in *BCAA* questioned the validity of comparing a model's output with data collected from a single monitor. *Id.*, cited by the Panel at 91 F.4th at 293. *See also Texas v. EPA*, 983 F.3d 826, 841 (5th Cir. 2020) ("'Given significant differences among counties, a direct one-to-one comparison of the data, including the methods used to measure such data, could be inappropriate or even illogical.'") (quotation omitted). Indeed,

because modeling average concentrations vary considerably over grid cells, "EPA does not expect comparisons between model predictions and monitor observations to exactly match." *BCCA Appeal Grp*, 355 F.3d at 832 (upholding EPA's reliance on Texas' modeling even though it did not match up with monitoring).

EPA did not ignore "an important aspect of the problem;" it found that comparing the readings from a single monitor located in a distant area that would not provide relevant readings, with the output from a model focused on a different (the correct) area, was not useful in determining that the modeling it relied upon for making its nonattainment designation was reliable. And this is precisely the type of determination (judgments about modeling and related data) that this Court has declared it should accord EPA significant deference. *See, e.g.*, *Galveston-Houston Ass'n for Smog Prevention v. EPA*, 289 F. App'x. 745, 749 (5th Cir. 2008) (deferring to EPA's judgments relating to photochemical grid modeling). The fact that, in Luminant's view, EPA allegedly failed to give sufficient weight to one specific factor (validation from readings from a single, distant monitor), a complaint that Petitioners now raise but failed to properly address to the Panel, does not render EPA's conclusion arbitrary and capricious. *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 135 (D.C. Cir. 2015) (Kavanaugh, J.) ("We will not invalidate EPA's predictions solely because there might be discrepancies between those predictions and the real world.").

## B. EPA Did Not Fail to Assess Luminant's Competing Model

Luminant further asserts that EPA ignored another important aspect of the problem, arguing that EPA ignored Luminant's alternative modeling. En Banc Pet. at 7. But EPA thoroughly reviewed Luminant's modeling, finding significant flaws and shortcomings that precluded reliance on that modeling. EPA Merits Br. at 11-12. EPA found Luminant's modeling to be flawed because, among other things, it: (a) improperly relied on unenforceable forecasted lower emissions instead of current *actual* higher emissions, as *required* under the statute; (b) improperly *assumed* collateral reductions of $SO_2$ that Petitioners predicted would result from *future restrictions* on mercury emissions, which is impermissible, *Texas v EPA*, 983 F.3d at 838; (c) used unapproved model pre-processors to adjust the measured stack temperatures and velocities, which likely resulted in *large unsubstantiated* changes in modeled concentrations; and (d) *misapplied* meteorological dispersion and used unsubstantiated adjustments to wind speeds and direction, using unapproved and insufficiently supported beta options not allowed under the regulatory version of the model that generally *lowers concentrations*. R.434 at 51-58 (App. 1286-93); R.438 at 4-5, 24-42 (App. 1320-21, 1340-58). Thus, EPA fully considered Luminant's modeling and found it not only unsound but constructed to artificially lower predicted emissions and concentration levels.

### C. Sierra Club's Modeling was Thoroughly Scrutinized by EPA and Established that Rusk/Panola Counties were in Nonattainment, Even Using Assumptions that Tend to Reduce Predicted Emission Levels and Even When Revising the Model to Address Issues Raised by EPA and Inputs Offered From Luminant

Finally, EPA did not move the scientific goalposts with shifting evaluation of Sierra Clubs modeling, as Luminant asserts. There is no rule that a party may submit only one set of modeling results and never revise it, nor do Petitioners cite to any such rule or practice. Allowing parties to revise modeling based on updated inputs is eminently responsible and designed to produce the most accurate predictions possible. Indeed, not only did Sierra Club submit multiple modeling results, so did Luminant. R.434 at 6 (App. 1241).

Ultimately, EPA based and/or reconfirmed its nonattainment designation on modeling that was specifically revised to address issues or revised inputs identified by both EPA *and* Luminant. 91 F.4th at 297. EPA found this revised modeling not only to be technically sound and well supported, the Agency also determined that it underestimated the level of nonattainment with $SO_2$ air quality standards. EPA En Banc Opp. at 12-14. And after Texas finally installed a monitor near the Martin Lake facility, it showed that Rusk and Panola Counties were, in fact, in significant nonattainment. This confirmed that the modeling EPA relied upon was sound and that the Longview monitor and Luminant's modeling, which did not reveal the NAAQS violations in Rusk and Panola Counties, were seriously flawed in their characterization of air quality in Rusk and Panola Counties.

### III. Conclusion

Luminant's en banc petition challenges a technical determination that Petitioners concede is governed by the arbitrary and capricious standard announced in *State Farm*, Pet. at vi-vii, 7-10. As this Court has explained, in applying the *State Farm* test, "review under the arbitrary-and-capricious standard is 'extremely limited and highly deferential." *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 234 (5th Cir. 2015). *See also Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd*., 602 F.3d 687, 699 (5th Cir. 2010). A court may not "substitute [its] judgment for that of the agency," *Clean Water Action v. EPA*, 936 F.3d 308, 316 (5th Cir. 2019), and instead "simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Nothing in the Supreme Court's *Loper* and *Ohio* decisions disturbs this established test.

An agency action is arbitrary or capricious if the agency "*entirely* failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm,* 463 U.S. at 43 (emphasis added). While Luminant may disagree with some of EPA's (and the Panel's) conclusions, EPA did not entirely fail to consider the points raised by Petitioners or otherwise ignore an important aspect of its nonattainment determination. Similarly, EPA's conclusions do not run counter to the data and other evidence before the agency. Considering this record, the Panel correctly and responsibly found EPA's nonattainment designation to be fully supported, and neither *Loper* nor *Ohio* affect that sound determination or merit further review of Petitioners' challenge.

As EPA previously explained, if Luminant has, since the challenged designation was issued, taken permanent and enforceable steps to reduce emissions that result in an $SO_2$ concentration level acceptable under applicable regulations (75 ppb), the Clean Air Act and EPA's regulations set out specific procedures that would allow the State to request that the nonattainment designation be revised to one of attainment, thereby alleviating the need for Luminant to take further affirmative steps to reduce $SO_2$ emissions.  42 U.S.C. § 7407(d)(3). EPA Merits Br. at 6.  Indeed, Petitioners can utilize data from its now nearby monitor to help establish this point, if that data actually supports a revised designation.  Petitioners' refusal to follow this straightforward path, and instead continue to contest a 2016 designation that showed the area at issue significantly violated the NAAQS concentration standard, serves only to confirm that Rusk and Panola Counties were in nonattainment with the $SO_2$ concentration level that is required to protect the health of persons living in those counties, and beyond.

Respectfully submitted,

*/s/ Perry M. Rosen*
PERRY M. ROSEN
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington D.C.  20044

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Letter Brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record for Petitioners and all other parties, who have registered with the Court's CM/ECF system.

Date: August 3, 2024

/s/ *Perry M. Rosen*
Perry M. Rosen
Counsel for Respondents