

September 3, 2024

**VIA Electronic Filing CM/ECF**

Lyle W. Cayce, Clerk
U.S. Court of Appeals, Fifth Circuit
Office of the Clerk
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA 70130-3408

    Re:   **Sierra Club's Letter Brief in Response to Court's August 20, 2024 Request,** *State of Texas, et al. v. EPA,* **Case No. 17-60088**

Dear Mr. Cayce,

    Intervenor-Respondent Sierra Club respectfully submits this letter brief in response to the Court's direction to the parties to address the significance, if any, of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Ohio v. EPA*, 144 S. Ct. 2040 (2024).

    Luminant sought *en banc* review, claiming that the Panel applied a "heightened standard of deference" to its review of the U.S. Environmental Protection Agency's ("EPA") nonattainment designation for the Rusk-Panola area—a standard that purportedly excused EPA from "its obligation to examine the relevant data and consider all aspects of the problem." Reh'g Pet. at 7–8. But the Panel applied the familiar, well-established standard of review that applies to claims of

1

arbitrary and capricious agency actions. *See* Sierra Club Reh'g Opp'n at 7-8, 19-20; EPA Reh'g Opp'n at 57. And the Panel correctly applied that standard to the record, concluding that EPA gave the evidence before it the required hard look. Accordingly, the Panel decision does not conflict with Supreme Court or circuit precedent, and there is no error in the Panel decision, let alone one of exceptional public importance. 5th Cir. R. 35 I.O.P. The Petition should be denied.

*Loper Bright* and *Ohio v. EPA* did not disturb the longstanding standard of review for arbitrary and capricious claims—which are the only claims for which Luminant sought rehearing. Both decisions recognize that courts should continue to conduct a careful, but deferential review of an agency's action under the arbitrary and capricious standard, which is exactly the standard of review the Panel applied. *Loper Bright*, 144 S. Ct. at 2261; *Ohio*, 144 S. Ct. at 2053. The Panel's application of that standard to the record before it is also consistent with the Supreme Court's application of that same standard in *Ohio v. EPA* to the specific arbitrary and capricious claim and record in that case.[1]

## I. The Panel Decision Applied an Appropriately Deferential Standard.

The Panel decision articulated the familiar standard for arbitrary and capricious review, explaining that the "reviewing court must 'insist

---

[1] The Panel decision is also consistent with *Loper Bright* because the Panel never deferred to any EPA statutory or regulatory interpretation. Instead, the Panel carefully considered the text and structure of the Clean Air Act and its implementing regulations and rejected Luminant's arguments that the EPA misconceived the law or its authority. In any case, Luminant's Petition for Rehearing does not assert that the Panel erroneously deferred to any EPA interpretation of the law, so the Court need not revisit those claims. *Alejos-Perez v. Garland*, 93 F.4th 800, 807 (5th Cir. 2024) (arguments raised for the first time in a supplemental letter brief are waived).

that an agency "examine the relevant data and articulate a satisfactory explanation for its action."'" Op. at 12 (quoting *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)). As part of that review, the "reviewing court does not 'substitute [its] judgment for that of the agency' . . . and instead 'simply ensures that the agency has acted within a zone of reasonableness.'" Op. at 12 (citation omitted). A court should be "most deferential" where the agency's "decision is based upon its evaluation of complex scientific data within its technical expertise." Op. at 13 (quoting *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983)).

The Supreme Court's recent decisions confirm the Panel's articulation of arbitrary and capricious standard of review. In *Loper Bright*, the Court explained that the Administrative Procedure Act "mandate[s] that judicial review of policymaking and factfinding be deferential." *Loper Bright,* 144 S. Ct. at 2261 (citing 5 U.S.C. § 706(2)(A) (agency action must be set aside if "arbitrary, capricious, [or] an abuse of discretion"); *id.* § 706(2)(E) (agency factfinding in formal proceedings to be set aside if "unsupported by substantial evidence.")). That deferential review of agency factfinding and technical determinations stands in stark contrast to the court's obligation to decide "legal questions by applying their own judgment" and "set aside any such action inconsistent with the law as they interpret it." *Loper Bright,* 144 S. Ct. at 2261.

Where, as here, there is no ambiguity about what the governing statute requires, the court's task is limited to "ensuring the agency has engaged in 'reasoned decisionmaking' within th[e] boundaries" of the statute. *Id.* at 2263; *see also id.* at 2259–60 (describing historical practice of applying "deferential review" to questions of how a "statutory term applied to specific facts found by the agency"). The Panel majority, in applying the longstanding arbitrary and capricious standard of review, carefully considered each of EPA's actions in ultimately concluding that EPA adequately assessed all available evidence.

3

The Court's decision in *Ohio* likewise did not signal a novel approach to arbitrary and capricious review. There, the "parties agree[d] on the rules that guide[d]" the Court's "analysis." *Ohio,* 144 S. Ct. at 2053. Those rules were the very same standards that governed the Panel decision's analysis here. The Court, like the Panel decision, operated from the premise that it "may not 'substitute its judgment for that of the agency." *Id.*; Op. at 12. The Court, like the Panel decision, confined its review to ensuring the agency "has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Ohio,* 144 S. Ct. at 2053 (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); Op. at 12. And the Court, like the Panel decision, recognized that an agency action does not meet that standard if it "simply ignore[d] 'an important aspect of the problem.'" *Ohio,* 144 S. Ct. at 2053 (quoting *State Farm*, 463 U.S. at 43); Op. at 16.

In sum, the Panel applied the identical standard that the Supreme Court and this court have applied for decades and that the Supreme Court recognized applies to arbitrary and capricious claims in *Loper Bright* and *Ohio*.

## II. The Panel Decision's Application of the Arbitrary and Capricious Standard Is Consistent with *Ohio.*

The Panel's careful, but deferential review of EPA's detailed technical findings within its expertise is consistent with how the Supreme Court applied the arbitrary and capricious standard in *Ohio*.

There, the Supreme Court concluded that the challenged agency action likely was arbitrary and capricious because the agency "offered *no* reasoned response" to a problem that had been "posed" by "commenters . . . during the notice and comment period." *Ohio,* 144 S. Ct. at 2054 (emphasis added). To that end, the Court found that commenters had surfaced concerns about whether the "emissions-control measures" EPA had adopted for a plan governing 23 states necessarily would stay the same if fewer states were subject to that

4

plan. *Id.* The Court recognized that there may be "some explanation why the number and identity of participating States does not affect" that plan, but faulted the agency because that "explanation . . . does not appear in the final rule." *Id.* Thus, "applicants" were "likely to prevail" on their arguments that the agency action was not "reasonably explained" and "instead ignored 'an important aspect of the problem' before it." *Id.* (citations omitted).

In contrast, here, EPA did respond to the relevant comments at issue, and its explanation was reasonable. Luminant claims that EPA's explanation fell short in three ways: (1) that EPA failed "to review the available monitoring data"; (2) that EPA failed to review "Luminant's modeling"; and (3) that EPA failed to address concerns with "Sierra Club's modeling." Reh'g Pet. at 7. The Panel disagreed with Luminant's reading of the record, explaining that "EPA did not 'fail[] to consider an important aspect of the problem'" but rather "address[ed] the Petitioners' concerns and explain[ed] why they were not merited with a plausible explanation[.]" Op. at 16 (citation omitted); *see also* Op. at 21–22, 24–25. The Panel thus found clear record explanations for EPA's determinations here, whereas the Supreme Court in *Ohio* found the record explanations there were likely lacking.

As Sierra Club (and the government) have explained, the Panel decision's understanding of the record is correct. For each of the three concerns Luminant now emphasizes, EPA acknowledged the concern and responded to it.

EPA's response to comments squarely addressed Petitioners' comments on available monitoring data by explaining that the Longview monitor—nineteen kilometers away and one county over—was simply too distant to be of any use in determining attainment near the plant, where the greatest sulfur dioxide ("$SO_2$") concentrations would be found. Sierra Club Reh'g Opp'n at 11 (citing App. 309, 1333–34, 1336). In contrast to Petitioners' claims in litigation (and commenter's in *Ohio*), Petitioners never asked that the monitoring data be used to "verify" Sierra Club's modeling, and never even alleged a

5

discrepancy with Sierra Club's modeled concentrations at the location of the monitor. Sierra Club Reh'g Opp'n at 10 (citing App. 518, 565). Indeed, no such discrepancy exists, as no Sierra Club modeling of *actual* emissions ever showed exceedances in the vicinity of the Longview monitor and outside of the final nonattainment area. Sierra Club Reh'g Opp'n at 9–10 (citing App. 71, 309, 1452–53; R.466, Attach. 4 at 5).[2] *See* Sierra Club Reh'g Opp'n at 9–11 for more detail.

Similarly—and even setting aside Luminant's failure to obtain pre-approval for its alternative model—as the Panel correctly concluded, EPA did assess Luminant's modeling "in detail" and cited "numerous," highly-technical reasons for finding Luminant's modeling unreliable. Op. at 22. EPA explained that Luminant had failed to "substantiate[]" its modifications to the agency's standard model because those adjustments resulted in "very significant" changes to Martin Lake's stack temperature and flue gas velocity that were inconsistent with the Company's own reported operational data and that resulted in "disproportionately large," "erratic," and "drastic[]" changes in $SO_2$ concentrations during *all* operating conditions, even those which would not have resulted in the "theorized" plume phenomena Luminant sought to correct, thereby skewing the modeling results. Sierra Club Reh'g Opp'n at 13 (citing App. 1290–93, 1320–21, 1340–55). EPA also rejected Luminant's modeling because it relied on *hypothetical* and "future non-enforceable" emissions reductions of up to forty percent, Sierra Club Reh'g Opp'n at 14 (citing App. 691, 1290, 1355–56), and therefore could not be used to determine whether the area surrounding Martin Lake "'meets' a NAAQS[,]" Sierra Club Reh'g Opp'n at 14 (citing App. 1290–91, 1355–56; *Texas v. EPA*, 983 F.3d 826, 838 (5th Cir. 2020)). EPA likewise rejected Luminant's non-modeled "alternate" design value "estimate," explaining that it was fundamentally flawed by their use of a 50% discounting factor, which was "not appropriate"—and which again Luminant had applied to all

---

[2] Record document 466 is not reproduced in the Appendix, but can be found at https://www.regulations.gov/comment/EPA-HQ-OAR-2014-0464-0466.

6

conditions, even during periods when Luminant's alleged overprediction phenomena would *not* be expected to occur. Sierra Club Reh'g Opp'n at 15 (citing App. 1289–90, 1342–43). *See* Sierra Club Reh'g Opp'n at 11–16 for more detail.

Finally, EPA provided a thorough explanation for its reliance on Sierra Club's 2016 modeling, which it found "was performed in accordance with appropriate EPA modeling guidance and us[ed] generally conservative assumptions" that would "tend to reduce/underestimate" $SO_2$ concentrations. Sierra Club Reh'g Opp'n at 16 (citing App. 1310). EPA walked through each assumption underlying the modeling to explain their overall conservative effect and noted the adjustments made to address Petitioners' criticisms of Sierra Club's earlier modeling. Sierra Club Reh'g Opp'n at 16 (citing App. 1296, 1310, 1357–58, 1361–62). EPA also explained why further adjustments responsive to Petitioners' comments would only yield increased concentrations even further above the nonattainment threshold. Sierra Club Reh'g Opp'n at 16-17 (citing App. 1310–12). In sum, EPA concluded that because Sierra Club's modeled concentrations were already at least fourteen percent above the National Ambient Air Quality Standards, and because the modeling was "deliberately conservative in under-estimating impacts," "the differences/changes to the Sierra Club modeling suggested by industry would not result in modeled values near or below the standard; therefore, EPA . . . finds that [Sierra Club's 2016] modeling is a sufficient basis for a determination of nonattainment and clearly demonstrates the area around Martin Lake is nonattainment." Sierra Club Reh'g Opp'n at 17 (citing App. 1311–12; *see also* App. 1337). The subsequent Reconsideration and Error Correction process only confirmed EPA's original findings. Sierra Club Reh'g Opp'n at 17-18 (citing App. 1568–76). *See* Sierra Club Reh'g Opp'n at 16–19 for more detail.

These explanations in the agency's record that respond to Luminant's concerns distinguish this case from *Ohio*. That the Panel reached a different outcome based on the administrative record in this case does not pose any contradiction. The two courts reached different

outcomes because they applied the relevant legal standard to different administrative records.

### III. Conclusion

The Panel did not defer to any agency interpretation of the law when it affirmed EPA's nonattainment designation. Nor did the Panel abdicate its responsibility for ensuring that the agency offered a reasoned explanation for its action. Accordingly, the Panel decision is fully consistent with the Supreme Court's decisions in *Loper Bright* and *Ohio,* and the Petition for Rehearing *En Banc* should be denied.

Respectfully submitted,

*/s/ Lisa K. Perfetto*
Lisa K. Perfetto
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7388
lperfetto@earthjustice.org

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

*Counsel for Sierra Club*


## CERTIFICATE OF SERVICE

On this 3rd day of September, 2024 a true and correct copy of the foregoing Letter Brief in Response to the Court's August 20, 2024 Request was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club